In the INTEREST OF TYLER T.,
a person under the Age of 17:

STATE of Wisconsin,
Petitioner-Respondent,

v.

TYLER T.,
Respondent-Appellant-Petitioner.

Supreme Court

*No. 2010AP784. Oral argument January 12, 2012.
—Decided May 22, 2012.*

2012 WI 52

(Also reported in 814 N.W.2d 192.)

1

For the respondent-appellant-petitioner there were briefs and oral argument by *Susan E. Alesia,* assistant state public defender.

For the plaintiff-respondent there was a brief by *Zeke Wiedenfeld,* assistant district attorney, *Phillip A. Koss,* district attorney, Elkhorn, and oral argument by *Zeke Wiedenfeld.*

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of an unpublished decision of the court of appeals[1] that affirmed an order by the Walworth County Circuit Court[2] waiving juvenile court jurisdiction over Tyler T. (Tyler).

¶ 2. Tyler argues that the circuit court erred as a matter of law in denying his request to strike a waiver investigation report prepared by the Walworth County Department of Health and Human Services (DHHS). The DHHS prepared its report after conducting a staffing meeting in which the Walworth County Assistant District Attorney, who filed the petition alleging Tyler's delinquency, participated. Neither Tyler nor his defense counsel was invited to attend the staffing meeting. Comparing a waiver investigation report to a presentence investigation (PSI) report, Tyler contends that the assistant district attorney's participation in the staffing meeting constituted improper ex parte[3] communication that compromised the objectivity of the waiver investigation report. As such, Tyler requests that we vacate the circuit court's order waiving juvenile court jurisdiction, order the preparation of a new waiver investigation report, and order the circuit court to conduct a new waiver hearing before a different judge.

---

[1] *State v. Tyler T.*, No. 2010AP784, unpublished slip op. (Wis. Ct. App. Dec. 29, 2010). The decision of the court of appeals was decided by one judge pursuant to Wis. Stat. § 752.31(2)(e), (3) (2009–10).

All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

[2] The Honorable James L. Carlson presided.

[3] "Ex parte," Latin for "from the part," is defined as "[o]n or from one party only, usu[ally] without notice to or argument from the adverse party." *Black's Law Dictionary* 597 (7th ed. 1999).

4

¶ 3. We decline Tyler's request and therefore affirm.

¶ 4. We conclude that the circuit court did not err in denying Tyler's request to strike the waiver investigation report prepared by the DHHS. While we have reservations about the DHHS's decision to invite only the assistant district attorney to its final staffing meeting, we decline to create a bright-line rule precluding the DHHS from communicating directly with either party, be it the State or the juvenile, for purposes of preparing a waiver investigation report. Rather, consistent with the DHHS's role in delinquency proceedings and in furtherance of the express objectives of Wis. Stat. ch. 938, we conclude that the DHHS is free to compile information for a waiver investigation report in the manner it deems most beneficial to the circuit court.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶ 5. On July 21, 2009, the State, through Walworth County Assistant District Attorney Zeke Wiedenfeld (ADA Wiedenfeld), filed a petition in the Walworth County Circuit Court alleging that Tyler, then 15 years old, was delinquent. In support of its petition, the State alleged that on June 19, 2009, Tyler was a party to an armed robbery in violation of Wis. Stat. §§ 939.05[4] and

---

[4] Wisconsin Stat. § 939.05, "Parties to crime," states, in relevant part:

> (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

> (2) A person is concerned in the commission of the crime if the person:

5

943.32(2).[5] More specifically, the State alleged that Tyler and an adult male named Terrance Walker (Walker), both in gray hooded sweatshirts and wearing bandanas over their faces, held up a gas station in Elkhorn, Wisconsin by displaying black airsoft guns that resembled semi-automatic handguns. The gas station attendant, working alone at the time, reported that Tyler and Walker pointed their guns at him and demanded money. Tyler and Walker allegedly left the gas station with just under $1,000.

¶ 6. According to the petition, Tyler advised a detective from the Elkhorn Police Department that he and Walker were dropped off at the gas station by an adult male named Michael Boyle (Boyle) and that Tyler had been involved in "about 6 different robberies since April or May" of 2009.

---

(a) Directly commits the crime; or

(b) Intentionally aids and abets the commission of it . . . .

[5] Wisconsin Stat. § 943.32, "Robbery," provides:

(1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means is guilty of a Class E felony:

(a) By using force against the person of the owner with intent thereby to overcome his or her physical resistance or physical power of resistance to the taking or carrying away of the property; or

(b) By threatening the imminent use of force against the person of the owner or of another who is present with intent thereby to compel the owner to acquiesce in the taking or carrying away of the property.

(2) Whoever violates sub. (1) by use or threat of use of a dangerous weapon, a device or container described under s. 941.26(4)(a) or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon or such a device or container is guilty of a Class C felony.

(3) In this section "owner" means a person in possession of property whether the person's possession is lawful or unlawful.

¶ 7. In addition to its delinquency petition, the State, again through ADA Wiedenfeld, filed a petition for waiver of juvenile court jurisdiction over Tyler pursuant to Wis. Stat. § 938.18.[6] In support of its petition for waiver, the State asserted that juvenile court jurisdiction would be contrary to the best interests of both Tyler and the public. The State noted that Tyler was charged with committing a serious crime that involved the threat of force with a weapon and which would constitute a felony if committed by an adult. Moreover, the State maintained, Tyler committed the crime with two adult conspirators under circumstances demonstrating aggression, premeditation, and willfulness. Finally, the State alleged that this crime was only one of several robberies committed by Tyler and that, in the event of his conviction, the remedies available to the criminal court would be more effective than those available to the juvenile court.

¶ 8. Pursuant to its authority under Wis. Stat. § 938.18(2m), the circuit court requested the DHHS to prepare a waiver investigation report analyzing the criteria for waiver with respect to Tyler. According to testimony derived from the waiver hearing, roughly ten members of the DHHS participated in a staffing meeting to determine the agency's recommendation as to whether the juvenile court should or should not waive jurisdiction over Tyler. At the invitation of the DHHS, ADA Wiedenfeld also participated in the staffing meeting, advocating in favor of waiver. Neither Tyler nor his

---

[6] Wisconsin Stat. § 938.18 provides, in relevant part, that the district attorney, the juvenile, or the court may petition for waiver of juvenile court jurisdiction if "[t]he juvenile is alleged to have violated any state criminal law on or after the juvenile's 15th birthday." *See* § 938.18(1)(c), (2).

7

defense counsel, Attorney Mary Burns (Attorney Burns), was invited to attend the staffing meeting. Still, in preparation for the staffing meeting, Erin Bradley (Bradley), a juvenile court intake worker who ultimately drafted the waiver investigation report on behalf of the DHHS, gathered information from both Tyler and Attorney Burns, as well as from Tyler's parents. In the end, the members of the DHHS failed to reach a consensus at the staffing meeting and consequently opted not to offer any formal recommendation as to waiver.

¶ 9.　The DHHS filed its waiver investigation report on February 17, 2010. In its report, the DHHS explained that while Tyler had no prior criminal history in Walworth County, he had a fairly extensive record in Kenosha County. In 2007, when Tyler was 13 years old, he was referred to Kenosha County's Juvenile Intake Services on charges of criminal damage to property and disorderly conduct. That referral resulted in a deferred prosecution agreement, which terminated successfully in 2008. In addition, the DHHS noted that Tyler had a delinquency petition then pending in Kenosha County for a separate charge of armed robbery, party to a crime. In that case, the Kenosha County Circuit Court denied the district attorney's petition for waiver of juvenile court jurisdiction. Finally, the DHHS advised that in 2009, Tyler was subject to two petitions for adjudication of wardship in Lake County, Illinois, both stemming from charges of armed robbery, aggravated robbery, and burglary. On January 13, 2010, Lake County's Nineteenth Judicial Circuit Court placed Tyler on five years of juvenile court supervision and ordered him to participate in the county's "FACE-IT" residential treatment program for juvenile probationers.[7]

---

[7] On January 14, 2010, Tyler returned to Kenosha County on a court-ordered capias, see Wis. Stat. § 938.19(1), at which

8

¶ 10. Concerning Tyler's personal and social history, the waiver investigation report provided that Tyler has a ninth grade education, suffers from no mental illnesses or developmental disabilities, and "presents in a pleasant and respectful manner." The DHHS further reported that Tyler maintains a positive and supportive relationship with his biological parents, his sister, and his grandparents. In addition, personnel from both the Illinois and Wisconsin detention centers indicated that Tyler is "very respectful to staff and follows directions without incident." Still, pursuant to its assessment, the DHHS advised that Tyler presents a "moderate risk" of delinquency.

¶ 11. Relevant to Tyler's underlying charge of armed robbery, the DHHS's waiver investigation report described Boyle, the adult male who allegedly dropped Tyler and Walker off at the gas station, as "a step-father figure to Tyler." Boyle reportedly dated Tyler's mother for a period of eight years, beginning when Tyler was 15 months old. After Tyler's mother ended the relationship, Tyler continued to visit Boyle on a regular basis. Tyler acknowledged that he assisted Boyle with several robberies and that Boyle regularly provided him with alcohol and other drugs. When asked why he agreed to assist in the robberies, Tyler explained that Boyle needed money in order to hire an attorney to get his roommate's two daughters out of foster care. According to Tyler, most of the money obtained from the robberies "went to the attorney fund and he kept little for himself."

¶ 12. The waiver investigation report confirmed the seriousness of Tyler's offense, describing the rob-

time he was placed in secure custody at the Washington County Juvenile Detention Center pending disposition in Kenosha County.

bery as planned, aggressive, and potentially violent. The DHHS further acknowledged that Tyler willfully participated "at his own discretion on multiple occasions over multiple dates."

¶ 13. Finally, as to the adequacy of facilities, services, and procedures available to Tyler within the juvenile justice system, the DHHS explained that Tyler's offense met the criteria for the five-year Serious Juvenile Offender (SJO) Program operated by the Department of Corrections (DOC). If placed in the SJO Program, Tyler would serve a maximum of three years in a secure juvenile correctional institution.

¶ 14. As previously mentioned, the DHHS declined to offer a formal recommendation as to waiver, citing "the complexity of the matter."

¶ 15. On February 19, 2010, in response to the DHHS's waiver investigation report, the State filed a memorandum arguing in favor of waiver of juvenile court jurisdiction over Tyler. The State contended that waiver was appropriate given Tyler's record of committing serious and violent crimes, his association with negative peers and adults, his history of substance abuse, and his high risk to reoffend. The State further maintained that Tyler's behavior warranted rehabilitation and confinement beyond what the juvenile court, including the SJO Program, could provide. In addition, the State stressed the desirability of prosecuting Tyler, Walker, and Boyle in the same court of criminal jurisdiction.

¶ 16. On March 9, 2010, Tyler filed a response to the State's memorandum and an objection to the DHHS's waiver investigation report. Tyler requested the juvenile court to retain jurisdiction, arguing that his offense, while serious, was committed at the behest of Boyle and that he has demonstrated his potential to

respond favorably to juvenile court supervision. Tyler further requested the court to strike the waiver investigation report on the grounds that ADA Wiedenfeld's ex parte participation in the DHHS's staffing meeting unduly influenced what was supposed to be an objective report prepared by an independent body. Absent ADA Wiedenfeld's participation in the staffing meeting, Tyler posited, the DHHS would have recommended that the juvenile court retain jurisdiction over Tyler, in accordance with the decision of the Kenosha County Circuit Court.

¶ 17. The circuit court held a two-day waiver hearing on March 10 and 12, 2010. At the hearing, both ADA Wiedenfeld and Attorney Burns questioned Bradley extensively regarding the DHHS's staffing meeting and the preparation of the waiver investigation report. Bradley confirmed that she spoke about Tyler's case with both ADA Wiedenfeld and Attorney Burns prior to drafting the waiver investigation report. While acknowledging that her conversations with Attorney Burns were "basically short hallway conversations," Bradley testified that ADA Wiedenfeld was not present for those conversations and that she relayed at the staffing meeting the information she gathered from Attorney Burns. Bradley further testified that even with ADA Wiedenfeld's participation in the staffing meeting, the meeting remained "well balanced" in terms of DHHS members in favor of waiver and those against waiver. When asked how common it is for the DHHS not to offer a recommendation as to waiver, Bradley responded, "I would say that's probably not very common."

¶ 18. Bradley's testimony was largely echoed by Dr. David Thompson (Dr. Thompson), the Deputy Director of the DHHS who was also present at the staffing

11

meeting. Dr. Thompson testified that the DHHS chose not to offer a recommendation as to waiver because the members "simply couldn't reach a consensus on what the recommendation should be." Dr. Thompson re-counted that "[t]here were strong feelings in [the DHHS] staffing that Tyler should be waived into adult court, and there were also strong feelings that he was a suitable candidate for remaining in the juvenile justice system." Moreover, Dr. Thompson volunteered that some members of the DHHS exhibited "fairly strong feelings for waiver" even prior to ADA Wiedenfeld's presence at the staffing meeting.

¶ 19. At the close of the hearing on March 12, 2010, the circuit court announced its decision to waive juvenile court jurisdiction over Tyler. The court was satisfied that the State had proven by clear and con-vincing evidence that juvenile court jurisdiction would be contrary to the best interests of both Tyler and the public. The court acknowledged that Tyler had behaved well in secure detention but expressed concern over his alcohol and drug abuse and his moderate to high risk of reoffending. Given the dangerous and serial nature of Tyler's offenses, the court found that juvenile court jurisdiction "would be a serious disservice to the public." The court further noted that Tyler's rehabilitative needs could still be served through the facilities and services afforded by the Kenosha County and Lake County juvenile courts.

¶ 20. The circuit court made clear that its deci-sion to waive juvenile court jurisdiction over Tyler was based upon the court's "own feelings" and not upon the DHHS's waiver investigation report. While remarking that it was "not a good idea" for the DHHS to invite only ADA Wiedenfeld to its staffing meeting, the court was satisfied that his presence was not coercive and that

positions both in favor of waiver and against waiver were represented. The court therefore denied Tyler's request to strike the waiver investigation report.

¶ 21. Three days later, on March 15, 2010, the circuit court entered its order granting the State's petition to waive juvenile court jurisdiction over Tyler.

¶ 22. Tyler appealed, and the court of appeals affirmed. *State v. Tyler T.,* No. 2010AP784, unpublished slip op. (Wis. Ct. App. Dec. 29, 2010). Concluding that a waiver investigation report is distinct from a PSI report, *id.,* ¶ 10, the court of appeals found no support for Tyler's argument that ADA Wiedenfeld was precluded from participating in the DHHS's staffing meeting, *id.,* ¶ 14. In any event, the court of appeals determined that the circuit court's decision to waive juvenile court jurisdiction over Tyler was made independent of the waiver investigation report. *Id.,* ¶ 15.

¶ 23. Tyler petitioned this court for review, which we granted on September 13, 2011.

## II. STANDARD OF REVIEW

¶ 24. The decision to waive juvenile court jurisdiction under Wis. Stat. § 938.18 is committed to the sound discretion of the juvenile court. *J.A.L. v. State,* 162 Wis. 2d 940, 960, 471 N.W.2d 493 (1991) (applying Wis. Stat. § 48.18 (1989–90))[8]; *D.H. v. State,* 76 Wis. 2d 286, 304–05, 251 N.W.2d 196 (1977) (applying Wis. Stat. § 48.18 (1975–76)). We will reverse the juvenile court's

---

[8] Effective July 1, 1996, as part of its creation of Wis. Stat. ch. 938, the Juvenile Justice Code, the legislature repealed Wis. Stat. § 48.18 (1993–94) and replaced it with Wis. Stat. § 938.18. 1995 Wis. Act 77, §§ 87–99, 629, 9400; *see also State v. Kleser,* 2010 WI 88, ¶ 42, 328 Wis. 2d 42, 786 N.W.2d 144.

decision to waive jurisdiction only if the court erroneously exercised its discretion. *J.A.L.,* 162 Wis. 2d at 960. A juvenile court erroneously exercises its discretion if it fails to carefully delineate the relevant facts or reasons motivating its decision or if it renders a decision not reasonably supported by the facts of record. *Id.* at 961; *D.H.,* 76 Wis. 2d at 305. In reviewing the juvenile court's discretionary decision to waive jurisdiction, we look for reasons to sustain the court's decision. *J.A.L.,* 162 Wis. 2d at 961.

¶ 25. At the same time, whether ADA Wiedenfeld's participation in the DHHS's staffing meeting entitles Tyler to a new waiver investigation report and a new waiver hearing before a different judge presents a question of law that we review without deference to the juvenile court.

### III. ANALYSIS

¶ 26. In this case, Tyler does not argue that the circuit court erroneously exercised its discretion when it waived juvenile court jurisdiction over Tyler. Rather, Tyler argues that the circuit court erred as a matter of law in denying his request to strike the DHHS's waiver investigation report. Comparing a waiver investigation report to a PSI report under Wis. Stat. § 972.15, Tyler contends that ADA Wiedenfeld's participation in the DHHS's staffing meeting constituted improper ex parte communication that compromised the objectivity of the waiver investigation report. As such, Tyler requests that we vacate the circuit court's order waiving juvenile court jurisdiction, order the preparation of a new waiver investigation report, and order the circuit court to conduct a new waiver hearing before a different judge. In support of his position, Tyler relies almost exclusively upon a series of cases in which the court of

appeals concluded that the integrity of the sentencing process requires that a PSI report be objective. We therefore begin our analysis by discussing those cases.

¶ 27. In *State v. Knapp,* 111 Wis. 2d 380, 385, 330 N.W.2d 242 (Ct. App. 1983), the court of appeals held that a defendant's Sixth Amendment[9] right to the assistance of counsel does not entitle the defendant to have counsel present at a PSI interview. The court of appeals explained that a PSI report assists the sentencing court in selecting an appropriate sentence for the defendant by gathering information concerning the defendant's personality, social circumstances, and pattern of behavior. *Id.* at 384, 386. Because the sentencing court is equally responsible to both the convicted defendant and the public, the court of appeals determined that access to "the fullest information possible" is "[h]ighly relevant, if not essential" to the sentencing court's decision. *Id.* at 384–85. The court of appeals concluded that defense counsel's presence at the PSI interview could "seriously impede" the sentencing court's ability to obtain and consider all relevant facts

---

[9] The Sixth Amendment of the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

The Sixth Amendment is made applicable to the states through the Fourteenth Amendment. *State v. Imani,* 2010 WI 66, ¶ 20 n.8, 326 Wis. 2d 179, 786 N.W.2d 40 (citing *Gideon v. Wainwright,* 372 U.S. 335, 342 (1963); *State v. Klessig,* 211 Wis. 2d 194, 202, 564 N.W.2d 716 (1997)).

that might aid the court in forming an intelligent sentencing decision. *Id.* at 385.

¶ 28. Nearly ten years later, in *State v. Perez,* 170 Wis. 2d 130, 142, 487 N.W.2d 630 (Ct. App. 1992), the court of appeals cited the same concerns in rejecting the defendant's argument that due process requires the presence of counsel at a PSI interview. The court of appeals reiterated that a PSI report serves as the sentencing court's information base, *id.* at 140, adding that the author of the PSI report acts exclusively on behalf of the independent judiciary, *id.* at 141. In order to safeguard the reliability and accuracy of the PSI report, the court of appeals ruled that "the probation and parole agent preparing the report must be neutral and independent of either the prosecution or the defense." *Id.* at 140. Otherwise, the court of appeals reasoned, the PSI interview would be transformed from an unbiased, information-gathering proceeding into an adversarial proceeding. *Id.* at 141. In sum, "[t]he active involvement of an advocate—defense counsel or, for that matter, the prosecution—in the information-gathering process could cause a serious degradation in the reliability and impartiality of the sentencing court's information base." *Id.*

¶ 29. Drawing upon *Perez,* in *State v. Suchocki,* 208 Wis. 2d 509, 520, 561 N.W.2d 332 (Ct. App. 1997), *overruled on other grounds by State v. Tiepelman,* 2006 WI 66, ¶ 2, 291 Wis. 2d 179, 717 N.W.2d 1,[10] the court

---

[10] In *Blum v. 1st Auto & Casualty Insurance Co.,* 2010 WI 78, ¶ 46, 326 Wis. 2d 729, 786 N.W.2d 78, this court held that unless we "explicitly state[] otherwise, a court of appeals opinion overruled by this court no longer retain[s] any precedential value." In the instant case, neither Tyler nor the State discusses whether *Suchocki* retains any precedential value in light of our holding in *Blum.* In fact, neither party even acknowledges that

of appeals concluded that the circuit court erred in denying the defendant's motion to strike the PSI report, reasoning that the marital relationship between the prosecutor and the author of the PSI report was itself sufficient to draw into question the objectivity of the PSI report. In that case, the PSI report was prepared by an agent of the Division of Corrections[11] who was married to the district attorney who prosecuted the defendant. *Suchocki,* 208 Wis. 2d at 513. The defendant moved to strike the PSI report, arguing that the marital relationship between the prosecutor and the author of the PSI report compromised the objectivity of the report and thereby tainted the sentencing process. *Id.* at 514. The circuit court denied the motion but permitted the defendant to file an alternative PSI report. *Id.* The court then considered both PSI reports at sentencing. *Id.*

¶ 30. On appeal, the court of appeals concluded that the circuit court erred in denying the defendant's motion to strike the PSI report. *Id.* at 520. Citing *Perez,* 170 Wis. 2d at 140–41, the court of appeals observed that the Division of Corrections, in fulfilling its role of gathering information for a PSI report, functions as an agent of the sentencing court. *Suchocki,* 208 Wis. 2d at 518. Because the integrity of the sentencing process

---

*Suchocki* has been overruled in part. In any event, because we conclude that *Suchocki* is inapplicable to the instant case, *see infra* ¶ 37, we need not decide today whether *Suchocki* retains any precedential value.

[11] Prior to the creation of the DOC in 1990, *see* 1989 Wis. Act 31, §§ 2569, 3203(23)(a), the Division of Corrections was contained within the Department of Health and Social Services. *See* Wisconsin Department of Corrections, Special Reports: A Brief History of the Department of Corrections, http://www.wi-doc.com/DOC_History.htm (last visited May 2, 2012).

demands that the PSI report be objective, the court of appeals reaffirmed that the author of the PSI report must be "neutral and independent from either the prosecution or the defense." *Id.* When a marital relationship exists between the prosecutor and the author of the PSI report, the court of appeals remarked, the author may be subconsciously influenced in forming her impressions of the defendant and in making a recommendation to the sentencing court. *Id.* at 519. Thus, the court of appeals held that the marital relationship alone was sufficient to draw into question the objectivity of the PSI report, regardless of whether or not the author was biased in fact. *Id.* at 520.

¶ 31. Still, the *Suchocki* court denied the defendant's request for resentencing, concluding that the defendant failed to show that the tainted PSI report prejudiced the sentencing process. *Id.* at 521. The court of appeals explained that the circuit court was conscious of the defendant's objection to the PSI report and expressly based its sentence on the defendant's uncontroverted conduct rather than on the recommendation contained in the PSI report. *Id.* at 521–22.

¶ 32. Finally, in *State v. Howland,* 2003 WI App 104, ¶ 37, 264 Wis. 2d 279, 663 N.W.2d 340, the court of appeals held that the prosecutor's contacts with the Division of Community Corrections (DCC),[12] in which he expressed his dissatisfaction with the recommendation contained in the PSI report, constituted a material and substantial breach of the plea agreement. In that case, the defendant was charged with second-degree sexual assault of a child and misdemeanor bail jumping.

---

[12] The DCC is a division of the DOC that oversees the supervision of individuals on probation, parole, or extended supervision.

*Id.,* ¶ 2. In exchange for the defendant's plea of no contest, the State agreed, *inter alia,* to dismiss the charge of bail jumping and to not make a specific sentence recommendation. *Id.* In spite of that agreement, on at least three occasions, the prosecutor contacted the DCC to complain about the PSI report's sentence recommendation of probation. *See id.,* ¶ 29. Subsequent to these contacts, the author of the PSI report amended the report by changing the recommendation from probation to five to seven years of incarceration. *Id.* The circuit court ultimately sentenced the defendant to 20 years imprisonment, comprised of nine years of initial confinement and 11 years on extended supervision. *Id.,* ¶ 16.

¶ 33. The court of appeals reversed and remanded the cause to the circuit court for resentencing conducted by a different judge. *Id.,* ¶¶ 37, 38. The court of appeals concluded that the State effectively procured a sentence recommendation through the DCC by expressing its concerns with the PSI report, thereby committing an "end run" around the plea agreement. *Id.,* ¶ 31. In addition to holding that the State materially and substantially breached the plea agreement, *id.,* ¶ 37, the court of appeals made a point to note that the prosecutor's contacts with the DCC "border[ed] on ex parte communications," *id.,* ¶ 32. Citing *Suchocki,* 208 Wis. 2d at 518, the court of appeals explained that the issue was not the mere existence of contact between the prosecutor and the DCC but rather whether the contacts subconsciously influenced the author of the PSI report. *Howland,* 264 Wis. 2d 279, ¶ 35. Again stating that a PSI report must be "accurate, reliable and, above all, objective," the court of appeals advised that a cooperative and open relationship between the defendant and the author of the PSI report "would be

19

impossible" if the defendant perceived the latter "to be a mere puppet of the district attorney's office." *Id.,* ¶ 36. Accordingly, in order "to avoid any further taint," the court of appeals ordered a new PSI report to be prepared by a department from a different county. *Id.,* ¶ 38.

¶ 34. Turning back to the instant case, Tyler urges us to apply the above series of cases to waiver investigation reports under Wis. Stat. § 938.18(2m). Tyler suggests that a PSI report is comparable to a waiver investigation report because both reports serve as the court's information base and because the author of both reports acts exclusively on behalf of the independent judiciary. It follows, according to Tyler, that because we require a PSI report to be objective, we must equally require a waiver investigation report to be objective. In the instant case, relying on *Suchocki* and *Howland,* Tyler contends that ADA Wiedenfeld's participation in the DHHS's staffing meeting could have subconsciously influenced the DHHS in forming its impressions of Tyler and in choosing not to offer any formal recommendation as to waiver, thus drawing into question the objectivity of the waiver investigation report as a matter of law. As a result, similar to the remedy afforded in *Howland,* Tyler contends that he is entitled to the preparation of a new waiver investigation report and to a new waiver hearing before a different judge.

¶ 35. We disagree. We conclude that the circuit court did not err in denying Tyler's request to strike the waiver investigation report prepared by the DHHS. While we, like the circuit court, have reservations about the DHHS's decision to invite only ADA Wiedenfeld to its final staffing meeting, we decline to create a bright-line rule precluding the DHHS from communicating

20

directly with either party, be it the State or the juvenile, for purposes of preparing a waiver investigation report. Rather, consistent with the DHHS's role in delinquency proceedings and in furtherance of the express objectives of Wis. Stat. ch. 938, we conclude that the DHHS is free to compile information for a waiver investigation report in the manner it deems most beneficial to the circuit court.

¶ 36. Wisconsin Stat. § 938.18(2m) grants the circuit court discretionary authority to "designate an agency, as defined in s. 938.38(1)(a), to submit a report analyzing the criteria [for waiver of juvenile court jurisdiction] specified in sub. (5)." Wisconsin Stat. § 938.38(1)(a) defines "agency" as the DOC, a county department (like the DHHS in this case), or a licensed child welfare agency. Wisconsin Stat. § 938.18(2m) further provides that "[t]he court may rely on facts stated in the report in making its findings with respect to the criteria under sub. (5)." Pursuant to § 938.18(5), the criteria for waiver of juvenile court jurisdiction include the personality of the juvenile; the prior record of the juvenile; the type and seriousness of the juvenile's offense; the adequacy and suitability of facilities, services, and procedures available for treatment of the juvenile and protection of the public within the juvenile justice system; and, if the juvenile was allegedly associated in the offense with persons who will be charged in the court of criminal jurisdiction, the desirability of trial and disposition of the entire offense in one court.

¶ 37. To be sure, as Tyler notes, a waiver investigation report under Wis. Stat. § 938.18(2m) bears some similarities to a PSI report under Wis. Stat. § 972.15. For example, both reports may be ordered and relied upon at the circuit court's discretion, *compare* Wis. Stat. § 938.18(2m), *with* Wis. Stat. § 972.15(1) ("After a con-

21

viction the court may order a presentence investigation . . . ."), and both reports are designed to assist the circuit court in making an informed decision by compiling information concerning the specific defendant, *compare* Wis. Stat. § 938.18(2m), (5), *with Knapp,* 111 Wis. 2d at 386 ("[P]resentence reports are designed to gather information concerning a defendant's personality, social circumstances and general pattern of behavior, so that the judge can make an informed sentencing decision."). *Cf. J.A.L.,* 162 Wis. 2d at 973 (comparing a waiver hearing to a sentencing hearing). Still, it does not follow, as Tyler suggests, that we must apply to waiver investigation reports the same objectivity requirements that we demand of PSI reports. In other respects, a waiver investigation report is fundamentally different than a PSI report.

¶ 38. A PSI report is prepared post-conviction by an employee of the DOC. *See* Wis. Stat. § 972.15(1). The DOC is "a neutral and independent participant in the sentencing process." *State v. McQuay,* 154 Wis. 2d 116, 131, 452 N.W.2d 377 (1990); *cf. Farrar v. State,* 52 Wis. 2d 651, 657, 191 N.W.2d 214 (1971) ("In Wisconsin, the entire sentencing process is to be a search for the truth and an evaluation of alternatives. Any advance understanding between prosecutor and defendant must not involve the trial judge—or any persons conducting a presentence investigation for such trial judge or court."). Thus, in preparing a PSI report, "[i]t necessarily follows that a parole or probation officer acts on behalf of an independent judiciary," not as an agent of either the State or the defense. *McQuay,* 154 Wis. 2d at 131; *see also State v. Washington,* 2009 WI App 148, ¶ 9, 321 Wis. 2d 508, 775 N.W.2d 535 ("The DOC does not function as an agent of either the State or the

defense in fulfilling its PSI role but as an agent of the court in gathering information relating to a specific defendant."). In this respect, a waiver investigation report is distinct from a PSI report. Unlike the author of a PSI report who, in order to protect the integrity of the sentencing process, must remain neutral and independent from both the prosecution and the defense, *see Howland,* 264 Wis. 2d 279, ¶ 36; *Suchocki,* 208 Wis. 2d at 518; *Perez,* 170 Wis. 2d at 140, the author of a waiver investigation report, here, DHHS, is necessarily involved with both the juvenile and the State from the start of the delinquency process. The DHHS is responsible for providing "24 hours a day, 7 days a week" intake services for the purpose of screening juveniles taken into custody. Wis. Stat. § 938.067(1). Intake services "shall" include, *inter alia,* interviewing the juvenile, § 938.067(2), determining whether and where the juvenile should be held in custody, § 938.067(3), (4), providing crisis counseling to the juvenile, § 938.067(5), requesting that a delinquency petition be filed or entering into a deferred prosecution agreement, § 938.067(6), and taking juveniles into custody, § 938.067(8m). Likewise, when a juvenile is not taken into custody, delinquency proceedings begin with a referral by law enforcement to an intake worker. *See* Wis. Stat. § 938.24(1). The intake worker must then "conduct an intake inquiry on behalf of the court to determine whether the available facts establish prima facie jurisdiction and to determine the best interests of the juvenile and of the public with regard to any action to be taken." § 938.24(1). Within 40 days of receiving the referral, the intake worker must determine whether to (1) request that the district attorney file a delinquency petition under Wis. Stat. § 938.25; (2) enter into a deferred prosecution agreement; or (3) close the case.

Wis. Stat. § 938.24(3)-(5). Once the district attorney receives an intake worker's request, the district attorney has 20 days to "file the petition, close the case, or refer the case back to intake or, with notice to intake, the law enforcement agency investigating the case." § 938.25(2). As these statutes demonstrate, unlike the sentencing process, which requires the DOC to remain neutral and independent from both the prosecution and the defense, the delinquency process requires immediate contact between the DHHS and both the juvenile and the State.

¶ 39. Given the DHHS's role in delinquency proceedings as outlined in Wis. Stat. ch. 938, we do not think that the DHHS's contact with the juvenile and the State must necessarily cease at the preparation of a waiver investigation report. Indeed, in light of the criteria under Wis. Stat. § 938.18(5) that the DHHS is directed to analyze, a waiver investigation report may not be complete unless the DHHS continues to communicate with the juvenile and the State. As previously mentioned, the criteria for waiver of juvenile court jurisdiction include, *inter alia*, "[t]he personality of the juvenile" and "[t]he adequacy and suitability of facilities, services and procedures available for treatment of the juvenile and protection of the public within the juvenile justice system." § 938.18(5). In delinquency proceedings, the district attorney "shall" represent the interests of the public. *See* Wis. Stat. § 938.09(1). It follows that the DHHS must necessarily communicate with the juvenile in order to analyze the juvenile's personality and must necessarily communicate with the district attorney in order to analyze whether the facilities, services, and procedures available within the juvenile justice system are sufficiently adequate to protect the public from the juvenile.

24

■

¶ 40. Moreover, permitting the DHHS to contact both the juvenile and the State for purposes of preparing a waiver investigation report effectuates the express objectives of Wis. Stat. ch. 938. By enacting Chapter 938, the legislature intended to "promote a juvenile justice system capable of dealing with the problem of juvenile delinquency, a system which will protect the community, impose accountability for violations of law and equip juvenile offenders with competencies to live responsibly and productively." Wis. Stat. § 938.01(2). To that end, one of Chapter 938's express objectives is "[t]o respond to a juvenile offender's needs for care and treatment, consistent with the prevention of delinquency, each juvenile's best interest and protection of the public, by allowing the court to utilize the most effective dispositional option." § 938.01(2)(f). In the context of waiving juvenile court jurisdiction, our courts have recognized that the juvenile court's dual responsibility to protect both the juvenile and the public is "best served when the court has access to the fullest information possible." *S.N. v. State,* 139 Wis. 2d 270, 275, 407 N.W.2d 562 (Ct. App. 1987);[13] *see also*

___

[13] Advancing that *S.N. v. State,* 139 Wis. 2d 270, 407 N.W.2d 562 (Ct. App. 1987), is the decisive authority on the instant case, the dissent concludes that the distinctions between a PSI report and a waiver investigation report "are without a difference" and that both reports must be held to an identical standard of objectivity. *See* dissent, ¶¶ 56–61. The dissent overstates the impact of *S.N.* In *S.N.,* a decision that spans just over seven pages, the court of appeals held that the then-existing Children's Code, Wis. Stat. ch. 48 (1985–86), did not prohibit the juvenile court from considering a waiver investigation report prepared by the county department of social services, even though the report went beyond the facts contained

*D.H.,* 76 Wis. 2d at 303. Permitting the DHHS to contact both the juvenile and the State for purposes of preparing a waiver investigation report ensures that the court has access to a wider range of information. Indeed, the application of rigid rules to a waiver proceeding is more likely to impair the court's ability to make an informed and intelligent decision than to lead to a just result. *D.H.,* 76 Wis. 2d at 303. Accordingly, we decline to create a bright-line rule precluding the DHHS from communicating directly with either party, be it the State or the juvenile, for purposes of preparing a waiver investigation report. Rather, we conclude that the DHHS is free to compile information for a waiver investigation report in the manner it deems most beneficial to the circuit court.

■

¶ 41. That being said, in the instant case, we share the circuit court's reservations about the DHHS's decision to invite only ADA Wiedenfeld to its final staffing meeting. Inviting only one party to a final staffing meeting creates a perception of imbalanced information, a perception which—like in the instant case—may prove inaccurate. Here, any perceived imbalance caused by

---

in the waiver petition. 139 Wis. 2d at 274–75. The court reasoned that § 48.18(5) (1985–86) "does not provide that such additional evidence may be only presented by the juvenile," and in fact, the juvenile court's dual function of protecting the juvenile and the public through its decision on waiver is "best served when the court has access to the fullest information possible." *Id.* at 275. As the dissent correctly points out, *see* dissent, ¶ 60, the *S.N.* court's determination that a juvenile court may consider a waiver investigation report prepared by a county department of social services is now codified at Wis. Stat. § 938.18(2m). Contrary to the dissent's insinuations, however, the *S.N.* decision is void of any discussion pertaining to the manner in which the county department must compile information for its waiver investigation report.

ADA Wiedenfeld's participation in the staffing meeting was refuted by the circuit court's uncontroverted findings that ADA Wiedenfeld's presence was not coercive and that positions both in favor of waiver and against waiver were represented. In addition, the circuit court expressly stated that its decision to waive juvenile court jurisdiction over Tyler was based upon the court's "own feelings" and not upon the DHHS's waiver investigation report. In the future, however, it may be a better practice for the DHHS to invite both parties, or neither party, to its final staffing meeting. We will leave that decision to the DHHS.

## IV. CONCLUSION

¶ 42. We conclude that the circuit court did not err in denying Tyler's request to strike the waiver investigation report prepared by the DHHS. While we have reservations about the DHHS's decision to invite only the assistant district attorney to its final staffing meeting, we decline to create a bright-line rule precluding the DHHS from communicating directly with either party, be it the State or the juvenile, for purposes of preparing a waiver investigation report. Rather, consistent with the DHHS's role in delinquency proceedings and in furtherance of the express objectives of Wis. Stat. ch. 938, we conclude that the DHHS is free to compile information for a waiver investigation report in the manner it deems most beneficial to the circuit court.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 43. DAVID T. PROSSER, J., did not participate.

¶ 44. ANN WALSH BRADLEY, J. (*dissenting*). In this case, the juvenile court asked the Walworth County

27

Department of Health and Human Services to prepare a waiver investigation report. Under the authority of Wis. Stat. § 938.18(2m), the Department's role is to serve as an independent agent gathering information to aid the court's determination about whether Tyler T. should be tried in juvenile or adult court. It held a meeting to formulate its recommendation to the court.

¶ 45. We are asked to determine whether the prosecuting attorney's ex parte advocacy at the Department's meeting constituted improper involvement in what should have been a neutral and independent decision-making process. The answer to this question should be a resounding "yes."

¶ 46. Instead, the majority equivocates. Expressing reservation about the Department's procedure, it acknowledges that such a procedure creates a perception of imbalanced information. Ultimately, however, it answers the question with a halfhearted "no."

¶ 47. The majority reaches this halfhearted conclusion by setting up a fallacy of false choice instead of squarely addressing the question presented and by selective analysis instead of applying the most relevant case law. Because I conclude that the prosecuting attorney's ex parte advocacy at the Department's decision-making meeting was improper, and because I cannot determine that Tyler suffered no prejudice as a result, I respectfully dissent.

I

¶ 48. The majority acknowledges that a waiver investigation report "bears some similarities to a PSI report," and that PSI reports are required to be independent. Majority op., ¶¶ 37, 38. It also acknowledges that the presence of an advocate risks transforming a meeting "from an unbiased, information-gathering pro-

ceeding into an adversarial proceeding" and could "cause a serious degradation in the reliability and impartiality of the [] court's information base." *Id.,* ¶ 28. Nevertheless, after cataloging the similarities and differences between PSIs and waiver investigation reports, *id.,* ¶¶ 37–39, the majority asserts that "it does not follow . . . that we must apply to waiver investigation reports the same objectivity requirements that we demand of PSI reports," *id.,* ¶ 37.

¶ 49. Ultimately, the majority "decline[s] to create a bright-line rule" because it "do[es] not think that the DHHS's contact with the juvenile and the State must necessarily cease at the preparation of a waiver investigation report." *Id.,* ¶¶ 35, 39. Although it expresses "reservations about the DHHS's decision to invite only [the prosecuting attorney] to its final staffing meeting," the majority concludes: "[T]he DHHS is free to compile information for a waiver investigation report in the manner it deems most beneficial to the circuit court." *Id.,* ¶¶ 41, 40.

¶ 50. The majority reaches this dubious conclusion as a result of two errors. The first is an error of logic, and the second is one of selective analysis.

A

¶ 51. The first error in the majority opinion is that it relies on a fallacy of false choice—an error of logic. Tyler asserts that the prosecuting attorney's ex parte advocacy at the Department's decision-making meeting was improper. He does not argue that all direct contact between the Department and the parties is prohibited.

¶ 52. Despite the narrow scope of Tyler's argument, the majority frames the issue much more broadly and therefore overshoots the issue on review. Its broad framing of the issue allows it to skirt an otherwise obvious result.

29

¶ 53. The implicit rationale is as follows: if it is improper for the Department to invite the prosecuting attorney's advocacy at its decision-making meeting, then it must likewise be improper for the Department to have any contact with the State or the juvenile at all for the purpose of gathering information relevant to the waiver decision.[1] Once examined, however, this false choice falls apart. To conclude that there was procedural error here, the court need not "create a bright-line rule" or require all contact between the Department and the parties to "necessarily cease." Rather, it need only answer the question presented.

¶ 54. There is a difference between soliciting information and soliciting advocacy. I agree with the majority that the Department has a great deal of discretion in how it would like to prepare the report and that it is required to have some interaction with both the parties to fulfill its information-gathering function. However, consistent with the juvenile court in this case,[2] I conclude that the Department compromises its role as an independent agent of the court when it solicits the ex parte advocacy of one party at the

---

[1] *See* majority op., ¶ 39 ("[W]e do not think that the DHHS's contact with the juvenile and the State must necessarily cease at the preparation of a waiver investigation report."); *id.,* ¶ 40 ("[P]ermitting the DHHS to contact both the juvenile and the State for purposes of preparing a waiver investigation report ensures that the court has access to a wider range of information."); *id.* ("[W]e decline to create a bright-line rule precluding the DHHS from communicating directly with either party . . . for the purposes of preparing a waiver investigation report.").

[2] After being apprised of the Department's proceedings, the court explained: "[A]pparently the District Attorney was invited and the defense was not. I tend to think that that is not a good idea, myself."

meeting in which it makes crucial decisions about its waiver recommendation and the contents of its report.

B

¶ 55. The majority's error in framing the question is compounded because it focuses its analysis on the wrong cases and overlooks the important principles derived from the most relevant case. It asserts that there are differences between PSIs and waiver investigation reports, and I agree. Yet, with no clear explanation of how the distinctions it identifies make any difference,[3] the majority somehow concludes that, as a result of these distinctions, waiver investigation reports are held to a lower standard of objectivity. *See* majority op., ¶ 37.

¶ 56. Even though the majority asserts that PSIs and waiver investigation reports are significantly different, it focuses its analysis on the case law dealing with PSIs. It barely pauses to mention *S.N. v. State,* a case that is specific to waiver investigation reports.

---

[3] Majority op., ¶¶ 38–40. Incidentally, I do not believe that the differences between waiver investigation reports and PSIs are as pointed as the majority suggests. For example, the majority contends that "a waiver investigation report may not be complete unless the DHHS continues to communicate with the juvenile and the State," and "permitting [this communication] for purposes of preparing a waiver investigation report effectuates the express objectives of Wis. Stat. ch. 938." *Id.,* ¶¶ 39, 40. In this respect, I see no difference between a waiver investigation report and a PSI. A PSI also serves an information-gathering function, and its author is required to attempt to interview the criminal defendant, Wis. Admin. Code DOC § 328.29(4), and to obtain information about the crime and the defendant's criminal history from the State, *id.,* § 328.27(3).

31

¶ 57. The use of waiver investigation reports was first discussed in *S.N. v. State,* 139 Wis. 2d 270, 407 N.W.2d 562 (Ct. App. 1987) (hereinafter, *In re S.N.*). That case contemplates that the preparer of a waiver investigation report is not an ally of the prosecution or the defense, but rather, an independent agent of the court.

¶ 58. The facts of *In re S.N.* are straightforward. The State filed a petition to waive a juvenile into adult court, and a social worker at the Department of Social Services prepared a waiver investigation report for the court. *Id.* at 272–73. At the time, there was no statutory authority for the court to request a waiver investigation report. Over the juvenile's objection, the court admitted the social worker's report into evidence.

¶ 59. In determining that the juvenile court did not err by admitting the report, the court of appeals stressed the independent nature of a waiver investigation report and the fact that the report was prepared for the benefit of the court. It emphasized the "juvenile court's duty to *independently determine* whether waiver is appropriate, rather than deferring to the state's or the juvenile's request for waiver or to either party's acquiescence in the other party's request." *Id.* at 275 (emphasis added). It explained that the statutes do not prohibit the juvenile court "from using *independent information* relevant to waiver, *such as the county department of social services' waiver investigation report admitted in the present case." Id.* (emphasis added).

¶ 60. The legislative history of Wis. Stat. § 938.18(2m) reveals that this statute was specifically created to codify the procedure set forth by *In re S.N.*[4]

---

[4] The text of sub. (2m) was proposed in a 1996 letter by Randall Schneider, an ADA for Racine County. Among other

Accordingly, the apparent purpose of sub. (2m) is to provide a procedure for court appointment of an independent agent of the court charged with gathering the fullest possible information.

¶ 61. Because the majority ignores the principles of the founding case of *In re S.N.*, it erroneously concludes that waiver reports are held to a lower standard of objectivity. To the contrary, my review of *In re S.N.* suggests that the distinctions between PSIs and waiver investigation reports identified by the majority are without a difference, and that both types of reports must be prepared by an independent agent of the court.

¶ 62. The waiver investigation report is supposed to be a means of gathering information, not a means of funneling advocacy to the juvenile court. The presence of advocates at the Department's meeting "could cause a serious degradation in the reliability and impartiality of the [] court's information base" and could transform (or, at the very least, risk transforming) the meeting "from an unbiased, information-gathering proceeding into an

recommendations, Attorney Schneider's letter suggested that the *In re S.N.* procedure be codified:

> Add a sub-section after sec. 938.18(2r) to read: "The court may designate an agency as defined in sec. 938.38(1)(a) to prepare and submit *a report analyzing the waiver criteria as defined in sub. (5) as applied to the juvenile.* The report shall be given to all parties at least 3 days prior to the waiver hearing. The court, in its discretion, may rely on facts contained within the waiver study in making its finding under sub. (5)." *This codifies In the interest of S.N., 139 Wis. 2d 270, 407 N.W.2d 562 (Ct. App. 1987).*

Letter from Randall Schneider to the Juvenile Justice Study Committee (Feb. 13, 1996) (on file with the Legislative Reference Bureau, Madison, Wisconsin) (emphasis added). This proposed language was modified slightly and was then incorporated, as modified, as an amendment to 1995 SB 624. Ultimately, it was passed and signed into law. 1995 Wis. Act 352.

adversarial proceeding." *See* majority op., ¶ 28 (discussing *State v. Perez*, 170 Wis. 2d 130, 487 N.W.2d 630 (Ct. App. 1992)). In this case, the risk to the court's information base was compounded because only one side was invited to advocate for its desired result. I conclude that the Department's procedure was in error.

## II

¶ 63. Although the juvenile court recognized the problem with the Department's procedure, it concluded that it was unnecessary to order a new report. In making its decision on waiver, the court attempted to isolate the effect of the tainted report. It explained: "I'm satisfied with the thorough input from both parties as to the situation, and I believe I've made my decision which is ultimately the Court's responsibility and not the Department's." It assured the parties that its waiver decision was made based upon its "own feelings," and not the Department's.

¶ 64. I appreciate the juvenile court's attempts to separate its waiver decision from the tainted report. Nevertheless, I cannot conclude that Tyler suffered no prejudice as a result of the improper procedure before the Department.

¶ 65. Although the court took great pains to disentangle the information in the report from its own conclusion, facts from the tainted report crept into the court's analysis of the waiver criteria.[5] The report's influence on the juvenile court is evinced by the court's reliance on the facts it adduced from the report.

---

[5] For example, when discussing the criteria, the juvenile court observed that Tyler came "from a family where there [were] multiple relationships and family members [involved with] drugs and alcohol," and that in school, there were periods

¶ 66. It is impossible to know what would have happened if the prosecuting attorney had not been present at the Department's meeting. There were many mitigating facts that could support a decision to retain Tyler in juvenile court, and there was significant sentiment against waiver in the Department. In fact, the assigned case worker volunteered, "I certainly felt there were reasons and information provided that a recommendation could be made to—to retain [Tyler] in juvenile court." Who knows what the recommendation would have been if the ex parte advocacy of the prosecuting attorney had not been infused into the discussion?

¶ 67. If the report had ultimately recommended against waiver, no one can know the impact that such a recommendation would have had on the juvenile court's determination. Judges often give great value to the on-the-ground determinations and recommendations of the Department.

¶ 68. The problem here is that we just don't know. We cannot unring the bell.

¶ 69. Accordingly, because I cannot conclude that Tyler suffered no prejudice, I respectfully dissent.

¶ 70. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.

where "there was a total lapse of doing his homework and getting poor grades." These facts come directly from the Department's report.