**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 30, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP17**

STATE OF WISCONSIN

Cir. Ct. No. 2023JV324

IN COURT OF APPEALS
DISTRICT I

IN THE INTEREST OF J. C., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

J. C.,

      DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: AMBER RAFFEET AUGUST, Judge. *Affirmed.*

¶1    COLÓN, J.[1]  Jacob[2] appeals from a nonfinal order of the juvenile court granting the State's petition for waiver of jurisdiction and waiving Jacob into adult court for charges of first-degree reckless injury, first-degree recklessly endangering safety, and possession of a dangerous weapon, all stemming from a shooting incident.  For the reasons set forth below, we affirm.

## BACKGROUND

¶2    On April 4, 2023, the State filed a delinquency petition charging Jacob with one count of first-degree reckless injury contrary to WIS. STAT. § 940.23(1)(a), one count of first-degree recklessly endangering safety contrary to WIS. STAT. § 941.30(1), and one count of possession of a dangerous weapon by a person under eighteen contrary to WIS. STAT. § 948.60(2)(a), all for a shooting incident that occurred in the early morning hours of April 3, 2023.

¶3    In the delinquency petition, the State alleged that Jacob and a group of his teenage friends were hanging out on the night of April 2, 2023, and into the early morning hours of April 3, 2023.  Around 4 a.m., a group of "opps" arrived.[3] Jacob became upset with their presence and started waiving a gun at them.[4]  The opps eventually left, and Jacob followed them out.  As they were driving away,

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  For ease of reading, we adopt the pseudonym used by the parties in accordance with WIS. STAT. RULE 809.19(1)(g).

[3]  As explained in the delinquency petition, "opp" is "a member of an opposing gang or group."

[4]  One of Jacob's friends told the police that he stole the gun from a former "associate" who had turned "opps."

Jacob fired shots at their vehicle. The driver was shot in the back of the head, causing the vehicle to lose control and crash. The driver went to the hospital for treatment of his injuries and survived by, as the State later described, "sheer luck." Police recovered four bullet casings from the alley.

¶4 Along with the delinquency petition, the State filed a petition for waiver of jurisdiction, and the State argued that "knowingly and intentionally firing a handgun into a car occupied by multiple people, is so reckless, dangerous and stupid" that Jacob could not be permitted to be released back into the community at the time that he would have to be released from custody in the juvenile court system. As the State explained, Jacob will turn eighteen in July 2024, and "with no Serious Juvenile Offender charges, he will have to be released from custody." Thus, the State argued that the juvenile system was "wholly inadequate to provide the necessary accountability for this offense."

¶5 In preparation for the waiver hearing, the Department of Youth and Family Services submitted a waiver study that recommended that Jacob be kept in the juvenile court system and not waived into adult court. Jacob's counsel also hired a licensed psychologist to evaluate Jacob and prepare a report. In her report, she provided an opinion that Jacob's treatment needs could be adequately addressed in the juvenile court system. However, she only addressed the criteria for waiver found in WIS. STAT. § 938.18(5) that related to Jacob's personality and Jacob's treatment needs and later explained at the hearing that she considered several of the criteria for waiver outside her area of expertise.

¶6 On October 10, 2023, the juvenile court held a waiver hearing at which Jacob's human service worker (HSW), Jacob's mother, and his evaluating psychologist testified.

¶7     The HSW testified that, if the juvenile court were to find Jacob delinquent, her recommendation would be that Jacob should be placed in St. Charles Intensive Monitoring Program with a stayed Department of Corrections order, which would essentially result in probation in a home placement. In follow up questioning, however, the HSW was made aware that she incorrectly believed at the time that she made her recommendation that the offenses here were eligible for the serious juvenile offender (SJO) program, and as result, Jacob was not actually eligible for the order the HSW recommended. Rather, the HSW was informed during questioning that enrollment in the Milwaukee County Accountability Program (MCAP) was the "most significant penalty" available for Jacob's case in the juvenile court system.

¶8     The psychologist was additionally questioned about the services that could be provided to Jacob in the juvenile court system, and during her testimony, she testified that the juvenile court system could supervise Jacob "for another eight months or so." She further testified that Jacob would "continue to make ground" during those eight months, and that if Jacob were placed in MCAP, the maximum in-custody time he would receive would be 180 days.

¶9     Following the testimony, the juvenile court summarized the testimony and enumerated each of the relevant criteria for waiver on the record. When it reached the adequacy of the juvenile court system for Jacob's case, the juvenile court discussed the various options for orders presented by the parties at the hearing, including whether an order placing Jacob in a "correctional placement" such as Lincoln Hills or an order for MCAP would be available through the juvenile court system. Within this context, the juvenile court stated:

> I believe under this factor, has to be the time left in the juvenile system if the [c]ourt keeps the case here.

[Jacob] turns [eighteen] at the end of July 2024, meaning that the [c]ourt would only have jurisdiction over him until that time, and that is not a significant period of time for continued supervision. I also note that these are not SJO eligible offenses as was referenced before, and therefore, there would not be an availability of Department of Corrections placement and extended placement time for DOC or Lincoln Hills.

....

In terms of the protection of the public, it's an extremely serious allegation that gives rise to the petition. And again, the [c]ourt is concerned about the time left available to assist [Jacob] and hold him accountable in the juvenile system and still provide for the protection of the public.

¶10 After finding that the State met its burden to prove by clear and convincing evidence that waiver was appropriate, the juvenile court continued:

The allegations in this case are extremely serious.... I can't find that the period of time left in the juvenile justice system is sufficient to protect the interest of [Jacob] in receiving services and being held accountable if found delinquent or the public in holding him accountable for the alleged behavior and ensuring safety.

¶11 In the end, the juvenile court granted the State's waiver petition and entered an order waiving Jacob into adult court. Jacob petitioned to appeal the juvenile court's order, and this court granted leave to appeal. *See* WIS. STAT. RULE 809.50(3).

## DISCUSSION

¶12 On appeal, Jacob argues that the juvenile court erroneously exercised its discretion when it granted the State's petition for waiver and waived jurisdiction over him. Specifically, Jacob argues that the juvenile court mistakenly believed that waiver of the juvenile court's jurisdiction was necessary because any services provided to Jacob would end upon his turning eighteen years old, and

5

Jacob contends that he is entitled to a new waiver hearing because he is eligible for an order in the juvenile court system that extends beyond his eighteenth birthday. We disagree.

¶13 Waiver of the juvenile court's jurisdiction is governed by WIS. STAT. § 938.18. We review the juvenile court's decision to waive jurisdiction under § 938.18 for an erroneous exercise of discretion. *State v. Tyler T.*, 2012 WI 52, ¶24, 341 Wis. 2d 1, 814 N.W.2d 192. "A juvenile court erroneously exercises its discretion if it fails to carefully delineate the relevant facts or reasons motivating its decision or if it renders a decision not reasonably supported by the facts of record." *Id.* "[W]e look for reasons to sustain the court's decision." *Id.*

¶14 The decision to waive jurisdiction requires that the juvenile court consider the following five factors: (1) the juvenile's personality; (2) the juvenile's prior record; (3) the "type and seriousness of the offense"; (4) "[t]he adequacy and suitability of facilities, services and procedures available for treatment of the juvenile and protection of the public within the juvenile justice system"; and (5) "[t]he desirability of trial and disposition of the entire offense in one court" if the juvenile was "associated" with individuals charged in adult court. WIS. STAT. § 938.18(5). The weight assigned to each factor is within the discretion of the juvenile court. *G.B.K. v. State*, 126 Wis. 2d 253, 259, 376 N.W.2d 385 (Ct. App. 1985).

¶15 Ultimately, to waive jurisdiction and considering the above factors, the juvenile court must find that there is "clear and convincing evidence that it is contrary to the best interests of the juvenile or of the public to hear the case." WIS. STAT. § 938.18(6).

¶16     In this case, Jacob takes issue with the juvenile court's consideration of the fourth factor because, as Jacob contends, the juvenile court erroneously believed that Jacob must be waived into adult court because the juvenile court could not enter an order extending beyond Jacob's eighteenth birthday.  We reject Jacob's argument, and we conclude that the juvenile court did not erroneously exercise its discretion when it granted the State's waiver petition.

¶17     As both parties recognize, there are orders available in the juvenile court system that could extend past a juvenile's eighteenth birthday and that these orders could apply in Jacob's case.  *See* WIS. STAT. § 938.355(4) (providing for certain orders that terminate one year after the date issued).  Both parties additionally recognize that these orders would not involve any time spent in custody and would generally involve "placement of the juvenile in his or her home." *See **id.***

¶18     Further, the record plainly demonstrates that the HSW and psychologist endorsed certain arrangements involving placements within the community, as opposed to placements in custody, which could extend beyond Jacob's eighteenth birthday.  Similarly, the record demonstrates that MCAP was presented during the hearing as the "most significant penalty" available in Jacob's case, and MCAP would have involved a maximum of 180 days in custody.

¶19     The record likewise plainly demonstrates that the juvenile court considered the options for out-of-custody orders presented by the HSW and the psychologist, and rejected them.  After detailing the out-of-custody services and programs available, the juvenile court turned to the additional consideration of the public stating, "In terms of the protection of the public, it's an extremely serious allegation that gives rise to the petition….  [T]he [c]ourt is concerned about the

time left available to assist [Jacob] *and* hold him accountable in the juvenile system *and* still provide for the protection of the public." (Emphasis added.) Thus, taken in context, the record demonstrates that, in light of all of the relevant considerations, which necessarily includes the nature of the allegations and the protection of the public, the juvenile court considered that an in-custody arrangement would be the most appropriate option applicable in Jacob's case. Further, the juvenile court considered the availability of in-custody arrangements for Jacob inadequate in the juvenile system with his eighteenth birthday imminently approaching.

¶20 In other words, the juvenile court considered that once a juvenile turns eighteen and is not eligible for placement in custody as part of the SJO program or otherwise, the juvenile court has no ability to hold the juvenile in custody, and the juvenile court considered this lack of ability to keep Jacob in custody inadequate in light of the nature of the allegations and the need to protect the public. *See* WIS. STAT. §§ 938.02(10r), 938.208, 938.209 (limiting juvenile detention facilities to those under the age of eighteen and excluding those under the age of eighteen from jails and prisons); *see also* WIS. STAT. §§ 938.355(4)(b), 938.34(4m) (stating that correctional placement orders "may apply" for up to two years or until the juvenile's eighteenth birthday).

¶21 As the State argued below, the juvenile court system is "very limited" in a case like Jacob's and a maximum sentence of 180 days in MCAP for shooting someone in the head "is wholly insufficient to hold him accountable to the community and to society." Given that the fourth factor requires that the juvenile court consider the adequacy of the juvenile court system for both Jacob's needs and the public's, *see* WIS. STAT. § 938.18(5)(c), this court concludes that the juvenile court did not erroneously exercise its discretion.

8

¶22    In arguing that the juvenile court here erroneously exercised its discretion and that he should be granted a new waiver hearing, Jacob relies on *State v. M.C.*, No. 2021AP301, unpublished slip op. (WI App Aug. 11, 2021).[5] Jacob's reliance on *M.C.* is misplaced.

¶23    In *M.C.*, the court remanded for reconsideration of the decision to grant a waiver after the juvenile court failed to consider the "suitability" of the SJO program and instead considered waiver appropriate because the juvenile system could not provide services to the juvenile after his eighteenth birthday. *Id.*, ¶¶1, 8-9.    Importantly, the court's decision to remand to reconsider the appropriateness of waiver was clearly driven by the express statutory requirement that the juvenile court consider the adequacy of the SJO program on the record at the hearing and the fact that the SJO program would extend beyond the juvenile's eighteenth birthday. *Id.*, ¶¶4-5, 8 (citing WIS. STAT. § 938.18(5)(c)).

¶24    Despite any similarity between the stated views of the juvenile courts in *M.C.* and here that the juvenile system cannot reach the juvenile beyond the juvenile's eighteenth birthday, this court nonetheless finds *M.C.* inapposite.  In contrast to *M.C.*, there is no dispute here that the SJO program is inapplicable to Jacob's case, and there is no way for the juvenile system to reach Jacob after his eighteenth birthday by way of the SJO program or other in-custody placement, as was the case in *M.C.*  Further, there is also no argument here that the juvenile court failed to consider an express statutory requirement at Jacob's waiver hearing. Thus, we reject Jacob's reliance on *M.C.*

---

[5] Pursuant to WIS. STAT. RULE 809.23(3)(b), an opinion from a one-judge panel issued on or after July 1, 2009, may be cited as persuasive authority.  While we need not distinguish or discuss an opinion issued by a one-judge panel, *id.*, we do so here for the sake of completeness.

¶25    Having considered the relevant facts and made a decision reasonably supported by the record, we conclude that the juvenile court did not erroneously exercise its discretion when it granted the State's petition to waive jurisdiction of the juvenile court.[6]  *See Tyler T.*, 341 Wis. 2d 1, ¶24.  "[E]ligibility is not the same as 'suitability,' the latter of which is the consideration for the court as part of its overall determination on whether waiver is appropriate."  *M.C.*, No. 2021AP301, ¶8.  In this case, while Jacob may have been eligible for orders extending beyond his eighteenth birthday, the record reflects that the juvenile court did not consider them suitable, and thus, found that the juvenile court system was not adequate in this case because the suitable orders would not extend past Jacob's eighteenth birthday.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[6]  As a result of our conclusion, we do not address the State's additional argument that the case would become moot if remanded for a new waiver hearing.  *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

10