**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 1, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP855**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021JV863

**IN COURT OF APPEALS
DISTRICT I**

IN THE INTEREST OF M.N., JR., A PERSON UNDER THE AGE OF 17:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

M.N., JR.,

      RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed.*

¶1    DONALD, P.J.[1]  M.N., Jr. ("Max")[2] appeals from a non-final order waiving him into adult court.  Max contends that the circuit court erroneously believed that supervision and services for him would end when he reached the age of eighteen.  For the reasons discussed below, we affirm.

## BACKGROUND

¶2    On September 28, 2021, the State filed a delinquency petition charging Max with three counts:  (1) second-degree recklessly endangering safety; (2) driving or operating a vehicle without the owner's consent; and (3) hit and run of an attended vehicle.  The petition alleged that on March 26, 2021, Max drove a stolen Kia at a high rate of speed and collided with another car.  Max fled and did not remain on the scene to render aid to the driver of the other car.  After his arrest, Max admitted to driving the stolen Kia.

¶3    On October 8, 2021, the State filed a petition for waiver of juvenile court jurisdiction.  Following a hearing which took place over several dates, the circuit court granted the motion waiving juvenile jurisdiction to the adult criminal court system.

¶4    In its decision, the circuit court first examined Max's record.  The court found that Max's record weighed "heavily" in favor of waiver to adult court given Max's "total disregard" for the safety and property of other people.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  For ease of reading and confidentiality purposes, we use a pseudonym to refer to M.N., Jr.

¶5 The circuit court noted that Max had four other delinquency petitions issued prior to the petition in this case. In the first matter, Max admitted to stealing multiple cars. In the second matter, Max rode in stolen cars as a passenger on two separate dates and resisted or obstructed an officer on both dates. Additionally, he operated a motor vehicle without the owner's consent on another date. In the third matter, officers approached a stolen car and Max was sleeping in it with two others. Max woke up and fled from the officers. When the officers eventually caught Max, he struggled physically with the officers. After Max was released from custody, Max drove another stolen car, and when police tried to stop him, he accelerated to speeds over eighty miles-per-hour on residential streets. He ignored traffic signs, swerved into oncoming traffic, attempted to collide with marked police cars, and eventually crashed into a parked car before fleeing on foot from the officers. The court indicated that the only thing that put a stop to Max's behavior was secure detention.

¶6 The circuit court then discussed this matter. The court characterized Max's conduct as "very serious, very dangerous conduct," which also weighs "heavily" in favor of waiver to adult court. The court noted that in this case, Max was driving a stolen car and crashed "head-on" into an occupied vehicle. Max was estimated to be driving sixty miles-per-hour in a thirty mile-per-hour zone. Following the crash, Max fled, and was later identified through DNA evidence left on the driver's side of the vehicle. When Max was identified and questioned, he admitted to being the driver.

¶7 Next, the circuit court considered Max's personality, character traits, and treatment history. The court started by stating that this factor was "a mixed bag." The court observed that Max was currently participating in the Milwaukee County Accountability Program and cooperating. The court, however, noted that

3

in looking at Max's "mental and physical maturity" and his "pattern of living," it made this factor "a very difficult one." The court noted that Max told one doctor that he received a rush from a high-speed chase and that this rush made him want to continue to engage in high-speed chases. Another doctor's report indicated that Max seeks to create an active, exciting, and stimulating social life, was most comfortable when he was busy, shows limited tolerance for boredom and downtime, and likes to challenge rules and authority.

¶8     The circuit court also addressed the adequacy and suitability of facilities, services, and procedures available for treatment. The court noted that Max would be eighteen in six months. The court stated that Max could go to a treatment shelter or Lincoln Hills, "[b]ut the problem with that is that it stops in six months, and there is nothing else available for overseeing [Max], … any sort of probation, any sort of supervision, any sort of programming that would end in about six months."

¶9     The circuit court stated that "a strong message of specific deterrence" needed to be sent to Max. The court stated that "the opportunity for further supervision and oversight in the adult system is much, much higher as to that." The court explained that deterrence comes from receiving charges in the adult court as well as "any sort of supervision or—or custody or a sentence that might contain both custody as well as extended supervision." The court stated that "all of this sending a message to him as well as providing for oversight that is going to be gone if he's in the juvenile system for only the next six months."

¶10     Finally, the circuit court examined the desirability and disposition of the entire offense in one court. The court noted that Max did not have any co-defendants who had been waived into adult court, so this factor was "arguably

neutral, but … weighing a bit against waiver." The court then stated that the State's waiver petition "says it best" and read the following language from the petition:

> This is [Max's] [fifth] issued case since April of 2021. Of his charged offenses, there are at least [ten] citizen-victims who have had to deal with the trauma, expense and aftermath of [Max's] continued criminal conduct. Though every one of his cases involves victimizing the public, none of his charges are Serious Juvenile Offender-eligible offenses. Thus, the juvenile system is unable to provide accountability, rehabilitation and protection of the public with the limited time available under non-SJO juvenile jurisdiction.

¶11 Max subsequently filed a petition for leave to appeal, which we granted. Additional relevant facts are referenced below.

## DISCUSSION

¶12 Max contends that the circuit court erroneously exercised its discretion when it waived him into adult court.

¶13 WISCONSIN STAT. § 938.18 governs waiver of juvenile court jurisdiction. The decision to waive juvenile court jurisdiction is committed to the sound discretion of the juvenile court. *State v. Tyler T.*, 2012 WI 52, ¶24, 341 Wis. 2d 1, 814 N.W.2d 192.

¶14 There are two steps in the process to waive juvenile jurisdiction. First, the court determines whether the matter has prosecutive merit. WIS. STAT. § 938.18(4)(a). Second, the juvenile court must determine whether to waive jurisdiction. This decision must be based on the following five criteria:

> (a) The personality of the juvenile, including whether the juvenile has a mental illness or developmental disability, the juvenile's physical and mental maturity, and the juvenile's

pattern of living, prior treatment history, and apparent potential for responding to future treatment.

(am) The prior record of the juvenile, including whether the court has previously waived its jurisdiction over the juvenile, whether the juvenile has been previously convicted following a waiver of the court's jurisdiction or has been previously found delinquent, whether such conviction or delinquency involved the infliction of serious bodily injury, the juvenile's motives and attitudes, and the juvenile's prior offenses.

(b) The type and seriousness of the offense, including whether it was against persons or property and the extent to which it was committed in a violent, aggressive, premeditated or willful manner.

(c) The adequacy and suitability of facilities, services and procedures available for treatment of the juvenile and protection of the public within the juvenile justice system, and, where applicable, the mental health system and the suitability of the juvenile for placement in the serious juvenile offender program under s. 938.538 or the adult intensive sanctions program under s. 301.048.

(d) The desirability of trial and disposition of the entire offense in one court if the juvenile was allegedly associated in the offense with persons who will be charged with a crime in the court of criminal jurisdiction.

Sec. 938.18(5). If the court determines on the record that there "is clear and convincing evidence that it is contrary to the best interests of the juvenile or of the public to hear the case," the court shall enter an order waiving jurisdiction. Sec. 938.18(6).

¶15 Max does not contest that the matter has prosecutive merit, or that the circuit court failed to apply any of the factors in WIS. STAT. § 938.18(5). Max argues that the circuit court mistakenly believed that supervision and services for him would end when he reached the age of eighteen. Max contends that a dispositional order could continue for a year regardless of when Max turns eighteen pursuant to WIS. STAT. § 938.355(4)(a). Section 938.355(4)(a) provides that:

6

> Except as provided under par. (b) or s. 938.368, an order under this section or s. 938.357 or 938.365 made before the juvenile attains 18 years of age that places or continues the placement of the juvenile in his or her home *shall terminate one year after the date on which the order is granted* unless the court specifies a shorter period of time or the court terminates the order sooner.

(Emphasis added.)

¶16 The State agrees with Max that a juvenile court order can extend beyond a juvenile's eighteenth birthday. The State contends, however, that the error did not make any difference to the circuit court's decision to waive Max into adult court. Thus, this case turns on whether the error was harmless.

¶17 An error is harmless unless "the error complained of has affected the substantial rights of the party[.]" WIS. STAT. § 805.18(2). "For an error 'to affect the substantial rights' of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." *Martindale v. Ripp*, 2001 WI 113, ¶32, 246 Wis. 2d 67, 629 N.W.2d 698 (citation omitted). "A reasonable possibility of a different outcome is a possibility sufficient to 'undermine confidence in the outcome.'" *Id.* (citation omitted).

¶18 Here, there is no reasonable possibility that the error contributed to the waiver outcome. *See id.* As stated above, Max contends that a dispositional order could continue for a year regardless of when Max turns eighteen. The circuit court's comments, however, reflect that it believed that more than one year was necessary. When discussing the Serious Juvenile Offender Program, which Max is not eligible for, the circuit court indicated that the potentially five-year-long program would have been "extremely helpful." The court stated that this would have "given years of services, an extended period in which … would've gone a long way for those of us in the system to fulfilling our respective

7

responsibilities to protect the community." Thus, the circuit court's comments reflect that it believed that "years" of services and supervision was needed to protect the community.

¶19 In addition, we note that in its decision, the circuit court indicated that Max's record and his conduct underlying this matter both weighed "heavily" in favor of waiver to adult court. Nothing about the circuit court's error changes the analysis on those two factors.

¶20 Therefore, we conclude that the circuit court's mistaken belief that a dispositional order would end in approximately six months when Max turned eighteen as opposed to a year after the entry of a dispositional order was harmless. Accordingly, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.