COURT OF APPEALS
DECISION
DATED AND FILED

November 2, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP807**

STATE OF WISCONSIN

Cir. Ct. No. 2021JV96

IN COURT OF APPEALS
DISTRICT II

IN THE INTEREST OF K.J.P., A PERSON UNDER THE AGE OF 17:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

K.J.P.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Waukesha County: MARIA S. LAZAR, Judge. *Affirmed*.

¶1 NEUBAUER, J.[1] K.J.P. appeals from a nonfinal order of the circuit court waiving juvenile court jurisdiction.[2] The State petitioned for an adjudication of delinquency regarding K.J.P. based on his alleged kidnapping, armed carjacking, armed robbery, and sexual assault of an eighty-seven-year-old victim. The State also petitioned for waiver of juvenile court jurisdiction. The circuit court held a hearing on the waiver petition and granted it, concluding that it was contrary to the best interests of K.J.P. or the public for the circuit court with juvenile jurisdiction to hear the case. This court affirms.

## BACKGROUND

¶2 Waiver of juvenile court jurisdiction is governed by WIS. STAT. § 938.18. **State v. X.S.**, 2022 WI 49, ¶25, 402 Wis. 2d 481, 976 N.W.2d 425. As relevant to this appeal, § 938.18(5) sets out five criteria a court must consider in determining whether to waive juvenile jurisdiction: (1) the juvenile's personality; (2) the juvenile's prior record; (3) "[t]he type and seriousness of the offense"; (4) "[t]he adequacy and suitability of facilities, services and procedures available for treatment of the juvenile and protection of the public within the juvenile justice system"; and (5) "[t]he desirability of trial and disposition of the entire offense in one court if the juvenile was allegedly associated in the offense with persons who will be charged with a crime in the court of criminal jurisdiction."

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] This court granted leave to appeal the order. *See* WIS. STAT. RULE 809.50(3).

Sec. 938.18(5)(a)-(d).[3]   The State bears the burden of establishing a basis for waiver by clear and convincing evidence.  *See* Sec. 938.18(6).

¶3      The circuit court must state its findings with respect to the above criteria on the record, and if it determines that "it is contrary to the best interests of the juvenile or of the public to hear the case," the court must enter an order waiving juvenile jurisdiction.  WIS. STAT. § 938.18(6).  With these legal principles in mind, we turn to the allegations against K.J.P. and the evidence presented at the waiver hearing.[4]

¶4      On December 2, 2021, the State filed a petition charging K.J.P. with first-degree sexual assault, armed robbery, armed carjacking, and kidnapping.  The State also filed a petition to waive juvenile jurisdiction over K.J.P.

¶5      The circuit court held a hearing on the State's waiver petition on March 9, 2022.  The State presented testimony from three law enforcement officers who spoke with the victim and K.J.P. on the date of the incident.  The officers' testimony revealed that the victim reported being approached by a young male, later identified as K.J.P., while she was returning some books at the library.  After helping her with the books, K.J.P. allegedly took out a knife and told the victim to get into the passenger seat of her vehicle.  According to the victim, K.J.P. got in the driver's seat and drove the vehicle to the parking lot of a nearby apartment complex, where he forced the victim to perform oral sex on him.  He

---

[3] The statute also requires the court to determine whether the matter has "prosecutive merit."  WIS. STAT. § 938.18(4)(a).  K.J.P. stipulated that this requirement is satisfied.

[4] Like the circuit court, we consider the facts outlined in the delinquency petition and described at the waiver hearing as allegations, not as facts that have been proven.

also allegedly attempted to remove the victim's pants in order to have sex with her, but "she told him it would not work" because of her advanced age. The victim also reported being told to "shut up" by her assailant as she prayed out loud during the incident. When K.J.P. dropped the victim off, he told her he was "the devil," knew where she lived, and would kill her and her family "if she does anything." After relaying what had occurred and retracing the route K.J.P. had driven, the victim began shaking, crying, and hyperventilating, prompting officers to summon an ambulance to transport her to the hospital.

¶6     Officers eventually stopped the victim's vehicle and apprehended K.J.P. after a short foot pursuit. According to one of the testifying officers, K.J.P. was taken to the Waukesha Police Department and given *Miranda*[5] warnings. The officer testified that K.J.P. said he "became enraged" after helping the victim with her library books, pulled a knife from his pocket and told the victim to get into the passenger seat of her vehicle. According to the officer, K.J.P. acknowledged driving away with the victim and taking her credit card after asking her for money but denied sexually assaulting her. The officer testified further that he checked K.J.P.'s record and learned that he had three prior citations for municipal ordinance violations. Officers later searched K.J.P.'s residence and located several items underneath grass clippings in a black trash bag that the victim had identified as being in her vehicle.

¶7     The State also presented testimony from a social worker with the Waukesha Department of Health and Human Services (DHHS) who prepared a report recommending against waiver. The social worker testified that DHHS

---

[5] *See **Miranda v. Arizona**, 384 U.S. 436 (1966).

4

based its recommendation on a belief that K.J.P. should be placed into the "Serious Juvenile Offender Program," or SJO, under which he would be supervised by the Department of Corrections for up to five years if adjudicated delinquent on the sexual assault count. The social worker described the allegations against K.J.P. as "probably if not the most severe[,] probably one of the more severe allegations" he had seen in his twenty years of experience. He agreed that the alleged offenses were premeditated and committed violently, aggressively, and willfully. The social worker was unable to determine K.J.P.'s potential for responding to future treatment because he was not receiving any treatment while in custody.

¶8     In addition to the witness testimony, the circuit court admitted into evidence two reports, one prepared by the social worker and the other prepared by Karyn L. Gust-Brey, Ph.D., a psychologist who had been appointed by the court to examine K.J.P. and evaluate whether he met the criteria for waiver. Gust-Brey's report contained information about K.J.P.'s family, educational history, past traumatic experiences, and mental health. The report also summarized the results of several psychological, behavioral, and cognitive tests administered to K.J.P. as part of the examination. In her report, Gust-Brey diagnosed K.J.P. with posttraumatic stress disorder with dissociative symptoms, cannabis use disorder, and adolescent antisocial behavior. She rated him "at the upper limit of the low range" of dangerousness, "in the middle range in terms of his violent and aggressive tendencies and planned criminality," and "within the high range" of the scale for amenability to treatment. In her opinion, "[K.J.P.]'s case should remain in juvenile court."

¶9    The circuit court announced its findings in an oral ruling on April 28, 2002.[6]    After reviewing the allegations against K.J.P., the court explained the legal standards governing waiver determinations.  The court then analyzed the evidence in light of the five criteria in WIS. STAT. § 938.18(5) and concluded that the State had met its burden to show "that it would be in the best interest of this child … as well as in the best interest of the public to waive [K.J.P.] to adult court."  Specific findings made by the court that are relevant to the issues raised on appeal are discussed below.

## DISCUSSION

¶10    "The decision to waive juvenile court jurisdiction under WIS. STAT. § 938.18 is committed to the sound discretion of the [circuit] court."  *X.S.*, 402 Wis. 2d 481, ¶25 (quoting *State v. Tyler T.*, 2012 WI 52, ¶24, 341 Wis. 2d 1, 814 N.W.2d 192).  The discretion conferred upon the circuit court includes the ability to determine how much weight should be afforded to each of the statutory criteria. *See J.A.L. v. State*, 162 Wis. 2d 940, 960, 471 N.W.2d 493 (1991).

¶11    On review, this court "first looks to the record to see whether … discretion was in fact exercised."  *Id.* at 961.  "The exercise of discretion incorporates a process of reasoning and proper explanation."  *X.S.*, 402 Wis. 2d 481, ¶33.  If discretion was exercised, this court will look for reasons to sustain the decision.  *Id.*, ¶34.  We will reverse a waiver determination "if and only if the record does not reflect a reasonable basis for the determination or a statement of

---

[6] The court placed some of its findings on the record with members of the public present and discussed other findings in a portion of the hearing that was closed to the public.

the relevant facts or reasons motivating the determination is not carefully delineated in the record." ***J.A.L.***, 162 Wis. 2d at 961.

¶12    K.J.P. does not argue that the circuit court failed to exercise discretion entirely, but rather that it erroneously exercised its discretion in four respects.  We address each below.

*Pattern of Living*

¶13    K.J.P. argues that the circuit court did not consider his "pattern of living."  *See* WIS. STAT. § 938.18(5)(a).  A juvenile's "pattern of living" is one factor a court must consider in examining the juvenile's personality.  Specifically, § 938.18(5)(a) requires consideration of "[t]he personality of the juvenile, including whether the juvenile has a mental illness or developmental disability, the juvenile's physical and mental maturity, and the juvenile's pattern of living, prior treatment history, and apparent potential for responding to future treatment."

¶14    The circuit court made findings as to each of these factors in assessing K.J.P.'s personality.  It began by noting the generally positive impressions of K.J.P. offered by his mother and DHHS.  The court stated that K.J.P. did not have any previous mental health diagnoses or developmental disabilities, that he was physically mature, and that the social worker did have concerns about his mental maturity.  The court stated further that K.J.P. "primarily lived with his mother," that his father "has a history of incarceration and drug use," and that his mother also "has criminal matters pending in another county."  It noted that K.J.P. had "reported mistreatment in his prior foster home" but was not able to provide many details.  The court also noted the social worker's belief that K.J.P. "had a lower mental maturity but may not have been on track at school because of his repeated failure to actually attend school."  The court recognized

that K.J.P. did not have a record of treatment for mental health concerns and stated that it gave little weight to the social worker's and Gust-Brey's opinions that K.J.P. showed potential for responding to treatment because of invalid responses on several of the tests that Gust-Brey administered. Taking all of these factors into consideration, the court stated that K.J.P.'s personality "sways slightly in his favor" and against waiver.

¶15    K.J.P. argues initially that the circuit court did not consider his pattern of living at all, but the transcript of the court's ruling refutes that contention. The court specifically identified where and with whom K.J.P. had lived, the legal problems his parents had experienced, and his history of not attending school. It also acknowledged that K.J.P. had explained to the police that he had not been at school on the day of his alleged encounter with the victim because he had been "out looking for a job to help his mother out." These facts pertained to K.J.P.'s pattern of living and were considered by the court.

¶16    K.J.P. also argues that the circuit court merely repeated testimony and did not adequately explain how his pattern of living "factored into its broader conclusion" that his personality leaned only slightly against waiver, when it "should have weighed heavily" in that direction. This court disagrees. The court's explanation of the personality criteria was grounded in its balancing of multiple factors, some of which cut in favor of waiver and some of which did not. The court's remarks show that it identified the relevant facts and, weighing them together, concluded that they essentially balanced each other out, making K.J.P.'s personality a "neutral" factor or one that leaned slightly against waiver. It is not for us to second guess whether K.J.P.'s personality weighs slightly or heavily against or in favor of waiver; that is a matter reserved for the circuit court's

discretion.  *See* ***J.A.L.***, 162 Wis. 2d at 960.  Because the court's evaluation of this criteria is supported by a reasonable basis in the record, we will not disturb it.

*K.J.P.'s Prior Record*

¶17    Next, K.J.P. contends that the circuit court erroneously exercised its discretion by emphasizing the facts underlying the present case when considering his prior record.  This argument invokes the second criteria listed in WIS. STAT. § 938.18(5), which requires the court to consider:

> The prior record of the juvenile, including whether the court has previously waived its jurisdiction over the juvenile, whether the juvenile has been previously convicted following a waiver of the court's jurisdiction or has been previously found delinquent, whether such conviction or delinquency involved the infliction of serious bodily injury, the juvenile's motives and attitudes, and the juvenile's prior offenses.

Sec. 938.18(5)(am).  K.J.P. argues that the court misapplied this section because it considered his "motives and attitudes" based on the "unproven allegations" of the present case, rather than any prior offense.  As a result, according to K.J.P., the circuit court considered his lack of a prior record only "somewhat" favorable to him and improperly considered the allegations in the present case twice.

¶18    The circuit court began its discussion of this criteria by describing it as "the easiest and also weigh[ing] in [K.J.P.]'s favor" because:

> There is no prior record for [K.J.P.].  He has never previously been found delinquent of any offense, much less one that involved the infliction of serious body injury or sexual assault.  There were not prior waivers to adult court. Detective Stucker did testify [K.J.P.] had been cited for four to five municipal violations, including battery, two disorderly conducts, and a theft of a bicycle.

9

The court then turned to the DHHS report, which it described as including an "explanation … regarding the question of the juvenile's motive [and] attitudes that's listed under this criterion." We understand the court to refer to the portion of the department's report that discussed K.J.P.'s motives and attitudes "regarding the allegations." The court found several aspects of the department's discussion of K.J.P's motives not credible, including his claims that he had skipped school on the date in question to look for a job, that he went to the library to warm up in the cold weather (the library was closed at the time), and that he panicked and ran from law enforcement after the alleged attack. In contrast to these explanations, the court believed that K.J.P.'s alleged conduct that day "show[ed] premeditation, planning, intent, and malicious heart."

¶19 The State offers two responses to K.J.P.'s argument. First, it argues that WIS. STAT. § 938.18(5)(am) can reasonably be read to permit consideration of a juvenile's "motives and attitudes" with respect to either prior offenses or those at issue in the waiver proceeding. Second, even if the circuit court improperly considered K.J.P.'s "motives and attitudes" with respect to the charged offenses, the State contends that error was not an erroneous exercise of discretion because the court found that K.J.P.'s lack of a prior record weighed against waiver. Although this court does not agree with the State's first argument, the circuit court's consideration of K.J.P.'s proffered explanations for his alleged behavior was not an erroneous exercise of discretion.

¶20 The State's first argument raises an issue of statutory interpretation, which we review de novo. *See **State v. Kleser***, 2010 WI 88, ¶36, 328 Wis. 2d 42, 786 N.W.2d 144. WISCONSIN STAT. § 938.18(5)(am) states that the court must consider the "prior record of the juvenile, including" five specific factors that follow the word "including." The use of the word "including" to introduce these

factors indicates that they fall under the broader rubric of the juvenile's "prior record." *See Include*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabr. 1993) (defining "include" as "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate … to take in, enfold, or comprise as a discrete or subordinate part or item of a larger aggregate, group, or principle"); *Noffke ex rel. Swenson v. Bakke*, 2009 WI 10, ¶10, 315 Wis. 2d 350, 760 N.W.2d 156 (stating that courts may consult dictionaries "to guide the common, ordinary meaning of words"). Thus, under § 938.18(5)(am), the circuit court may consider a juvenile's "motives and attitudes" only with respect to prior offenses or conduct.

¶21 Nonetheless, the circuit court did not erroneously exercise its discretion in considering the explanations K.J.P. gave for the conduct underlying the charges in this case because WIS. STAT. § 938.18(5)(b) directs the circuit court to consider "[t]he type and seriousness of the offense, including whether it was against persons or property and the extent to which it was committed in a violent, aggressive, premeditated or willful manner." The statutory directive to consider premeditation and willfulness reasonably allowed the court to evaluate not only the unlawful acts K.J.P. is alleged to have committed, but also his explanations for those acts. Though the court did not cite this portion of the statute, this court must search the record for reasons to uphold the circuit court's exercise of discretion. *X.S.*, 402 Wis. 2d 481, ¶34. Here, though the court associated its discussion of K.J.P.'s statements to DHHS with the "motives and attitudes" language that appears in § 938.18(5)(am), its consideration of those statements was permitted under § 938.18(5)(b) and thus was not an erroneous exercise of discretion.

*Amenability to Treatment*

¶22    K.J.P.'s third argument focuses on the circuit court's consideration of his amenability to treatment. As part of a court's analysis of a juvenile's personality, the court must consider the juvenile's "apparent potential for responding to future treatment." WIS. STAT. § 938.18(5)(a).

¶23    K.J.P. challenges the circuit court's finding that he showed no intention of taking "therapy and treatment seriously" and its decision not to accord significant weight to the recommendations of DHHS and Gust-Brey. The circuit court made these determinations based on several considerations. First, it described the alleged assault of the victim as "deliberate" and reviewed "all the little efforts that [K.J.P.] took to cover up his criminal conduct," including allegedly breaking or hiding some items stolen from the victim. Next, the court cited K.J.P.'s purported inability to recall the alleged sexual assault, which stood in contrast to his recollection of many of the other incidents the victim described to the police and of his alleged efforts to cover up his conduct after the assault.

¶24    In addition, the court found several faults with Gust-Brey's analysis and accordingly gave "very little weight" to her opinion that K.J.P. was highly amenable to treatment and to DHHS's recommendation against waiver, which rested in part on her analysis. In the court's view, Gust-Brey had "place[d] perhaps too much weight on [K.J.P.]'s and his mother's concerns about waiver" and his mental health, which the court said were "newly realized and did not exist before these offenses." The court also noted that Gust-Brey had identified a "significant lack of validity" in multiple tests she administered to K.J.P., which in its view reflected her belief that "[K.J.P.] was either lying, manipulating, or exaggerating during the assessments." In addition, the court stated that Gust-Brey

did not know of the extent to which K.J.P. allegedly went to conceal his conduct and believed she would have elevated his level of dangerousness had she been fully informed of this conduct. Finally, the court cited Gust-Brey's apparent unfamiliarity with the SJO program and found that she had not given sufficient regard to the gravity of the charged conduct, which the court described as "egregious" and "highly serious."

¶25    We must accept the circuit court's findings unless they are clearly in error. ***J.A.L.***, 162 Wis. 2d at 966. "[T]o command a reversal, such evidence in support of a contrary finding must itself constitute the great weight and clear preponderance of the evidence." ***Id.*** (quoting ***Cogswell v. Robertshaw Controls Co.***, 87 Wis. 2d 243, 249-50, 274 N.W.2d 647 (1979)). K.J.P.'s disagreements with the findings upon which the circuit court relied in giving little weight to the treatability opinion of Gust-Brey do not clear this high threshold. The court could reasonably conclude that Gust-Brey overstated K.J.P.'s amenability to treatment because of the validity issues in multiple tests she administered and K.J.P.'s alleged inability to remember sexually assaulting the victim. The court could reasonably infer from K.J.P.'s refusal to acknowledge the sexual assault, when contrasted with his acknowledgment to other charged conduct, that K.J.P. would not be amenable to the treatment recommended to address the assault. In addition, the court did not find or presume K.J.P. to be guilty of the sexual assault charge in the waiver proceeding; it specifically stated that its decision was based on the allegations in the delinquency petition. None of K.J.P.'s other arguments show that the court's consideration of his amenability to treatment was based on clearly erroneous facts or that its determination lacks a reasonable basis in the record.

*Comparison to **B.B. v. State***

¶26   Lastly, K.J.P. argues that the circuit court erroneously exercised its discretion by analogizing his conduct to the homicide offenses at issue in ***B.B. v. State***, 166 Wis. 2d 202, 479 N.W.2d 205 (Ct. App. 1991).  In ***B.B.***, this court upheld a decision to waive jurisdiction over a juvenile accused of shooting five family members to death, loading their bodies into a vehicle, setting it on fire, and then burying some of the remains.  *Id.* at 205-06.  The circuit court stated that the offenses alleged against K.J.P. "carry with them the sheer brutality [and] casual disregard for the personal privacy of the victim that the five first-degree homicides evidenced in the *B.B.* case."  K.J.P. disputes this characterization and contends that the circuit court's comparison to ***B.B.*** was inappropriate because no party at the hearing disputed that the allegations against him were serious.

¶27   The circuit court did not erroneously exercise its discretion in citing ***B.B.***.  Although the court found that the offenses charged against K.J.P. were comparable in some respects to the homicide offenses in ***B.B.***, it specifically stated that the offenses charged in this case "do not rise to the level of" the conduct at issue in ***B.B.***  The court's statement reflects its understanding of the difference between the conduct at issue in ***B.B.***, and the charged offenses in the present case.  At the same time, however, it is evident from the court's remarks that it believed the type and seriousness of the offenses weighed heavily in favor of waiving juvenile jurisdiction over K.J.P, as was the case in ***B.B.***  Given the nature of the charged conduct, that belief is supported by the record, and the court did not erroneously exercise its discretion in relying on ***B.B.***

## CONCLUSION

¶28 The circuit court's decision to waive juvenile jurisdiction over K.J.P. was not an erroneous exercise of discretion. The court correctly cited the criteria governing waiver, identified the relevant facts, applied the criteria to those facts, and reached a reasonable conclusion that waiver of jurisdiction was appropriate. K.J.P. has not shown that the court erroneously exercised its discretion in granting the State's waiver petition.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.