COURT OF APPEALS
DECISION
DATED AND FILED

October 3, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP285**

Cir. Ct. No. **2022JV13**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

IN THE INTEREST OF T. H., JR., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

  V.

T. H., JR.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Barron County: JAMES C. BABLER, Judge. *Affirmed*.

¶1    STARK, P.J.[1]  Thomas[2] appeals a nonfinal order that waived him from juvenile court into adult court.  Thomas argues that the circuit court

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

erroneously exercised its discretion by: finding that it could not enter and stay a serious juvenile offender (SJO) order—which would have extended the time during which Thomas could remain under juvenile court supervision; making dispositional findings concerning Thomas' eligibility for the SJO program at the waiver hearing; and failing to explain the basis for its finding that the one year and five months available for Thomas' juvenile supervision was insufficient to protect the public. We conclude that the court did not erroneously exercise its discretion and, accordingly, we affirm.

## BACKGROUND

¶2 According to testimony introduced at the waiver hearing, Thomas—then sixteen years old and without a driver's license—was driving a car with three passengers when he decided to drive over a dip in the road at "70 to 100 miles per hour" so that the vehicle would "catch air." Thomas crashed the vehicle, resulting in the deaths of two of the passengers and serious injuries to the third passenger.

¶3 Thomas was charged with six crimes, including two counts of second-degree reckless homicide and one count of second-degree reckless injury. The Barron County Circuit Court entered a temporary physical custody order, placing Thomas in secure custody at the Northwest Regional Juvenile Detention Center. Thomas was subsequently transferred to the Rawhide Boys Ranch residential care program (Rawhide).

---

[2] For ease of reading and to protect confidentiality, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

¶4    The State petitioned the circuit court to waive Thomas into adult court. It alleged that Thomas would not benefit from prosecution of this case in the juvenile justice system. It further alleged that given Thomas' age, the juvenile court would only have jurisdiction over Thomas for approximately one year and five months. In light of the seriousness of the offenses, the State contended that one year and five months was insufficient to hold Thomas accountable for his actions. The State therefore asserted that it was in the public's interest for the court to waive Thomas into adult court.

¶5    The circuit court held a hearing to determine whether to waive its juvenile court jurisdiction. Based upon the allegations in the petition, the court first found that the case had prosecutive merit. The State then called its first witness, police captain Jason Hagen, who testified that Thomas: did not call 911 after the accident; did not try to help the passengers in the car; and, in general, would smoke marijuana "whenever he had it" and he would use it up to five to ten times a day, including the morning of the accident.

¶6    The circuit court also heard testimony from Dr. Claire Patterson, a psychologist at RISE Wisconsin. Patterson testified that she conducted an evaluation of Thomas—which included a cognitive functioning evaluation and personality assessment—while he resided at Rawhide. Based on the personality assessment, Patterson stated that Thomas met the criteria for "complex post-traumatic stress disorder, … major depressive disorder, attention-deficit/hyperactivity disorder, … as well as cannabis use disorder." Patterson further testified that these four diagnoses were treatable, that Rawhide had the appropriate treatment providers to address Thomas' needs, and that she expected Thomas to make significant progress at Rawhide if he stayed there for one year.

¶7 Doctor Patterson also noted that Thomas was more likely to be successful if treated in the juvenile system rather than the adult system. Patterson explained that in the juvenile system, Thomas would be "connected with providers and services that [were] aimed at treating juveniles," while the adult system is very unlikely to offer him the specific "trauma-focused cognitive behavioral therapy [that] is developed for children and generally practiced by providers who work with minors." She also testified that family involvement was "something that [could] be a part of the juvenile justice system," and there were "more risks for minors in adult facilities," including the "risk of engaging in other delinquent or unsafe behaviors."

¶8 The circuit court also heard testimony from Lindsey Zenkowich, the social worker who conducted Thomas' juvenile intake conference after the accident. Zenkowich testified that Rawhide could address—and was currently addressing—all of Thomas' needs that were identified during his evaluation. Zenkowich further opined that the juvenile system had the resources and tools to successfully provide Thomas services, that the juvenile system could make significant progress in addressing Thomas' treatment needs, and that it would be contrary to Thomas' best interest to remove him from Rawhide.

¶9 During closing arguments, Thomas' counsel argued that Thomas would be suitable for the SJO program, and he asked the circuit court to enter a "[s]traight SJO" order, which would give the juvenile court five years of supervision over Thomas. In the alternative, counsel argued that the court enter a "hybrid" SJO order wherein the court would order and then stay Thomas' participation in the SJO program, thereby permitting Thomas to remain at Rawhide. Any violations would result in a lift of the stay which would commence the five-year SJO order. Counsel noted that the court could also enter a standard

juvenile dispositional order, but that the other two options would allow for Thomas' juvenile supervision past the time a standard dispositional order would expire.

¶10    In making its findings, the circuit court first addressed Thomas' argument that an SJO order would allow him to remain in the juvenile system for an appropriate length of time.  In order to consider this argument, the court stated that it needed to determine whether Thomas would be eligible for an SJO order.  It found that the SJO program "is not available here."  According to the court, Thomas was not eligible for the SJO program because Rawhide, a nonsecure residential facility (not a juvenile correctional facility), was an appropriate placement for Thomas.  The court further noted that Thomas' suggestion that the court enter a "hybrid" SJO order was statutorily unsupported.

¶11    The circuit court found that it would be in Thomas' best interest to not waive juvenile jurisdiction, because Rawhide was an appropriate placement for Thomas and provided the services that Thomas needs.  However, the court also noted that Thomas could only remain in the juvenile system until he graduated high school—one year and five months from the hearing date—which the court found to be an insufficient length of time for Thomas' supervision, considering the seriousness of the offenses and the need to protect the public.  The court also found that it could not impose and stay a lengthier SJO order when an SJO order was statutorily unsupported.  Accordingly, the court found that it would be against the public's best interest to hear Thomas' case in juvenile court, and the court granted the State's petition to waive Thomas into adult court.

¶12    Thomas filed a motion for reconsideration, arguing that the circuit court could impose and stay an SJO order.  He also argued that the court erred by

ruling on the issue of his dangerousness at the waiver hearing, that this issue would have been properly considered at a juvenile dispositional hearing, and that there was a basis to find dangerousness. After a hearing, the court denied Thomas' motion on the same grounds as the prior order. Specifically, the court found that there was insufficient time to supervise Thomas in the juvenile system and protect the public and that the court could not provide for Thomas' supervision in the juvenile justice system for a longer period of time because Thomas did not qualify for an SJO order as Rawhide was an appropriate nonsecure placement.

¶13 Thomas now appeals. Additional facts are provided below as necessary.

**DISCUSSION**

¶14 On appeal, Thomas argues that the circuit court erroneously exercised its discretion by: (1) finding that it could not simultaneously order and stay an SJO order; (2) making dispositional findings during the waiver hearing; and (3) failing to articulate a reasonable basis to conclude that it would be contrary to the public's best interest to keep Thomas in juvenile court for one year and five months. We conclude that the court did not erroneously exercise its discretion in granting the waiver petition.

¶15 "The decision to waive juvenile court jurisdiction under WIS. STAT. § 938.18 is committed to the sound discretion of the juvenile court." *State v. Tyler T.*, 2012 WI 52, ¶24, 341 Wis. 2d 1, 814 N.W.2d 192. We "will reverse a juvenile court's waiver determination if and only if the record does not reflect a reasonable basis for the determination" or if "reasons motivating the determination

[are] not carefully delineated in the record." ***J.A.L. v. State***, 162 Wis. 2d 940, 961, 471 N.W.2d 493 (1991).

¶16     "There are two steps in the process to waive juvenile court jurisdiction.  First, '[t]he [circuit] court shall determine whether the matter has prosecutive merit.'" ***State v. X.S.***, 2022 WI 49, ¶27, 402 Wis. 2d 481, 976 N.W.2d 425 (first alteration in original; quoting WIS. STAT. § 938.18(4)(a)).  If the court finds prosecutive merit, it moves to the second stage, wherein the court must consider five statutory factors—enumerated in § 938.18(5)—to determine whether it is "contrary to the best interests of the juvenile or of the public to hear the case" in juvenile court.  Sec. 938.18(6).  Thomas does not argue that the court erroneously exercised its discretion when it found prosecutive merit on the face of the petition.  Therefore, we address only the second step in the juvenile waiver process.

## I.  Judicial authority to order and stay an SJO order

¶17     Thomas argues that the circuit court erroneously exercised its discretion when it mistakenly determined that it could not use WIS. STAT. § 938.34(16) to stay an SJO program disposition.  Thomas notes that § 938.34(16) contains no restrictions that limit its application to any available disposition, and he argues that the court erred by concluding that § 938.34(16) does not apply to the SJO program.  We conclude that Thomas misconstrues the basis for the court's finding that it could not stay an SJO disposition in this case.

¶18     WISCONSIN STAT. § 938.34(4h) allows the circuit court to place a juvenile in the SJO program only if both of the following apply:

> (a) The juvenile is 14 years of age or over and has been adjudicated delinquent for committing or conspiring to commit a violation of … [WIS. STAT. §] 940.06 ….
>
> (b) The court finds that the only other disposition that is appropriate for the juvenile is placement in a juvenile correctional facility under sub. (4m).

Section 938.34(16) allows the court to "enter an additional order staying the execution of the dispositional order" "[a]fter ordering a disposition under this section."

¶19 We first note that Thomas correctly argues that WIS. STAT. § 938.34(16) can be applied to stay a disposition to the SJO program. *See* § 938.34(16); **State v. Cesar G.**, 2004 WI 61, ¶33, 272 Wis. 2d 22, 682 N.W.2d 1 (holding that allowing the stay of a disposition under § 938.34 is consistent with "the protection of the public" and "the juvenile's best interest[s]," and gives the court the "flexibility to tailor dispositional orders to the circumstances of a particular case").

¶20 Thomas, however, misconstrues the basis for the circuit court's refusal to impose and stay an SJO order. The court stated that "the law does allow me to stay an [SJO] order, but I first have to make a finding that it's appropriate." The court further explained:

> I specifically find [an] SJO is not appropriate for [Thomas], and I don't like saying that.
>
> ….
>
> Rawhide is an appropriate placement for [Thomas] under the juvenile system. … [F]or an SJO I'd have to find that there's no other appropriate setting other than a correctional one, and that just isn't true. And based upon this record, that's the only finding I can make.

8

¶21 The circuit court did not erroneously exercise its discretion by finding that it could impose and stay an SJO order, but it could not do so under the facts of this case as an order placing Thomas in the SJO program was not possible because Rawhide—which is not a juvenile correctional facility—was an appropriate placement. Stated differently, the court found that Thomas did not meet the statutory requirements for placement in the SJO program, and, therefore, it could not impose and stay an order placing him in that program. Juvenile courts cannot impose and stay an order for which a juvenile is not eligible. The court based its decision on a careful consideration of WIS. STAT. § 938.34(4h) and (16) and on evidence showing that Rawhide was an appropriate placement for Thomas. Therefore, the court did not erroneously exercise its discretion when it found that it could not impose and stay an SJO order for Thomas. *See J.A.L.*, 162 Wis. 2d at 961.

¶22 Thomas argues, for the first time in his reply brief, that he was eligible for an SJO order because he was dangerous enough for a custodial placement. Thomas further argues that he cannot be "so dangerous that he needed a lengthy period of supervision to be held accountable for his crime[s]" while simultaneously being "not dangerous enough for a custodial placement." We need not address arguments raised for the first time in a reply brief. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). However, even if Thomas had properly raised this argument, we find it unpersuasive.

¶23 The circuit court noted that Thomas' offenses were "incredibly serious" due to the "dangerousness not only to those passengers but to the other motoring public." However, the evidence showed that, at the time of the waiver hearing, Thomas' dangerousness to the public was from immaturity and unmet

treatment needs, not from violent and intentional acts. Thomas does not argue that the court's findings—i.e., that he required a nonsecure setting for treatment and supervision and that he did not need to be placed in restrictive custody—were clearly erroneous. Thus, Thomas was statutorily ineligible for placement in the SJO program, whether or not that order was imposed and stayed.

¶24    Nevertheless, the circuit court further explained that it was "fearful that once [Thomas] is out of Rawhide that he again may choose to say, 'I'm not going to take treatment.'" The court was concerned that upon his release from Rawhide, Thomas could still require treatment, but he would have come close to, or have actually aged out of, juvenile supervision. As a result, the court could reasonably conclude that while Thomas did not require restrictive custody, he was still a danger to the community such that his supervision for longer than one year and five months was required.

## II. Dispositional findings at the waiver hearing

¶25    Thomas next argues that the circuit court erroneously exercised its discretion by failing to apply the proper legal standard when the court made dispositional findings at the waiver hearing. Thomas contends that "[w]aiver requires only consideration of the 'adequacy and suitability' of the SJO [p]rogram." *See* WIS. STAT. § 938.18(5)(c). He asserts that the court exceeded this consideration when it also determined that Thomas would not qualify for the

SJO program.[3]   We conclude that the court did not erroneously exercise its discretion by considering whether Thomas would qualify for the SJO program.

¶26    WISCONSIN STAT. § 938.18(5)(c) permits the circuit court, at a juvenile waiver hearing, to consider

> [t]he adequacy and suitability of facilities, services and procedures available for treatment of the juvenile and protection of the public within the juvenile justice system, and, *where applicable, the mental health system and the suitability of the juvenile for placement in the serious juvenile offender program under [WIS. STAT. §] 938.538 or the adult intensive sanctions program under [WIS. STAT. §] 301.048.*

(Emphasis added.)   "[S]tatutory interpretation 'begins with the language of the statute.  If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).  "With the exception of technical or specially-defined words, statutory language is given its common and ordinary meaning." *State v. Ziegler*, 2012 WI 73, ¶42, 342 Wis. 2d 256, 816 N.W.2d 238.

¶27    The plain language of the statute directs courts to consider the juvenile's suitability for placement in the SJO program.  We, therefore, conclude that the circuit court appropriately determined that Thomas was not suitable for placement in that program because it determined that he was not eligible for such placement.  The definition of "suitable" is "able, qualified." MERRIAM-WEBSTER

---

[3] Thomas also argues that, by making dispositional SJO findings at the waiver hearing, the circuit court circumvented the process required to make such findings, as a dispositional hearing would require a prior adjudication of his guilt and a report from a child welfare agency, which the court did not have here.  Further, Thomas argues that at a dispositional hearing, he would have the right to present evidence relevant to the issue of disposition.  Because we conclude that the court did not make dispositional findings, we do not address this argument.

DICTIONARY, https://www.merriam-webster.com/dictionary/suitable (last visited Sep. 27, 2023). Similarly, the definition of "eligible" is "qualified to participate or be chosen." MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/eligible (last visited Sep. 27, 2023). Thus, the court properly considered whether Thomas was suitable for placement in the SJO program when it considered whether Thomas was eligible for the SJO program. In other words, the court was permitted to—and did—consider whether Thomas qualified for the SJO program due to a lack of dangerousness and due to Rawhide being a proper placement for Thomas. *See generally **Kalal***, 271 Wis. 2d 633, ¶¶45-46.

¶28    The State argues, and we agree, that Thomas' interpretation of WIS. STAT. § 938.18(5)(c) would lead to an absurd result because a juvenile court considering an adult waiver petition could only consider what programs exist in the juvenile system but it could not consider whether the juvenile is actually eligible for those programs or dispositions. Here, the circuit court did not erroneously exercise its discretion when it found that Thomas was not suitable for placement in the SJO program because he was not eligible for placement in that program.

### III.  Sufficiency of the circuit court's reasoning

¶29    Thomas next argues that the circuit court erroneously exercised its discretion by failing to articulate a logical rationale for its finding that one year and five months in the juvenile system was an inadequate amount of supervised time to protect the public. Relatedly, Thomas argues that the court failed to explain what a longer period of supervision could accomplish that the shorter period could not. In making this argument, Thomas notes that the State's own

witnesses testified that Rawhide had the resources to meet Thomas' treatment needs and that the court stated that Rawhide was an appropriate placement for Thomas.[4]

¶30 A circuit court's exercise of discretion "contemplates a process of reasoning. This process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards." *State v. Taylor*, 2006 WI 22, ¶17, 289 Wis. 2d 34, 710 N.W.2d 466 (citation omitted). If a court "fails to adequately set forth its reasoning in reaching a discretionary decision, this court will search the record for reasons to sustain that decision." *Long v. Long*, 196 Wis. 2d 691, 698, 539 N.W.2d 462 (Ct. App. 1995).

¶31 Here, the circuit court appears to have relied upon two factors in finding that the length of Thomas' supervision under a juvenile order was insufficient: the seriousness of Thomas' offenses and his significant treatment needs.

¶32 First, the circuit court discussed the nature and seriousness of Thomas' offenses. The court noted that Thomas' crime was "a crime against persons. It may have not been intentional, but it is … reckless …. [T]here's evidence of 70 to 100 miles per hour going over this. Just the dangerousness not

---

[4] Thomas also contends that the circuit court erroneously exercised its discretion by not considering that the juvenile system has the same services that Thomas needs and that Thomas would have had those services in the juvenile system for five years under an SJO order. Because we conclude that the court could not enter an SJO order for Thomas, thereby restricting the juvenile court's supervision to one year and five months, we do not address this argument.

only to those passengers but to the other motoring public, this is an incredibly serious offense."

¶33    Second, the circuit court was concerned that Thomas may need extended supervision. Specifically, the court noted that Thomas' marijuana use indicated that Thomas did as he pleased, that Thomas did not avail himself of services when he needed them, and that Thomas has "a number of problems—mental health, behavioral, criminal problems." Regarding these concerns, the court stated:

> I have to say I am also fearful that once [Thomas] is out of Rawhide that he again may choose to say, "I'm not going to take treatment." … [T]here is that issue of what to do in the community unless he is under long-term supervision. … I see it as a probation case …. [T]he adult system can provide probation for a significant period of time which is clearly in the public's best interest.

¶34    The record therefore reflects that the circuit court's order was based upon the need for protection of the public. Given the seriousness of Thomas' offenses, coupled with his significant treatment needs, the court wanted Thomas to be supervised long enough so that he would be required to participate in all treatment and programming necessary to be certain that he did not engage in future offenses. The court was clearly concerned that treatment could not be provided in the short time remaining under juvenile supervision, and there would be no mechanism to ensure that Thomas received it after that supervision was completed. Given the seriousness of the offenses, the court found that protection of the public required a longer period of supervision than one year and five months. Thus, the court sufficiently articulated the basis for its decision that there was inadequate time to supervise Thomas in the juvenile justice system.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.